UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNCIL FOR OPPORTUNITY IN EDUCATION, <br><br>         Plaintiff, <br><br>     v. <br><br> U.S. DEPARTMENT OF EDUCATION, et al., <br><br>         Defendants. | Civil Action No. 25-3491 (TSC) |

**DEFENDANTS' COMBINED MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, AND <u>MEMORANDUM IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

Table of Contents ................................................................................................................ i

Table of Authorities ............................................................................................................ ii

Background ........................................................................................................................... 1

    I.     Statutory Background ...................................................................................... 1

          A.    Fiscal Year 2025 TRIO Appropriations ............................................ 1

          B.    FY 2025 Student Support Services ("SSS") New Awards ........................ 3

    II.    Procedural Background ................................................................................... 5

Legal Standards ................................................................................................................... 6

    I.     Rule 12(b)(1) .................................................................................................. 6

    II.    Rule 12(b)(6) .................................................................................................. 6

    III.   Preliminary Injunction .................................................................................. 7

Argument .............................................................................................................................. 7

    I.     This Action Should be Dismissed on Numerous Grounds. ................................... 7

          A.    This Court Does Not Have Jurisdiction Over Plaintiff's Claims ............... 7

          B.    Plaintiff Is Not Likely to Prevail on Its APA Claims (Counts I-V) .......... 19

          C.    Plaintiff's Ultra Vires Claim (Count VI) Fails. ................................... 24

          D.    Plaintiff's Request for A Writ of Mandamus under 28 U.S.C. § 1361 (Count VII) Fails .............................................................................. 26

    II.    Even if the Court Does Not Dismiss This Action, Plaintiff Is Not Entitled to a Preliminary Injunction. .............................................................................. 28

          A.    Plaintiff Is Not Likely to Prevail on the Merits of Their Claims. ............. 29

          B.    Plaintiff Cannot Establish Irreparable Harm ...................................... 29

          C.    The Equities and Public Interest Weigh Against Relief. ........................ 32

          D.    Any Relief Should Be Limited in Scope and Narrowly Tailored ............. 35

          E.    The Court Should Order Plaintiff to Post Bond Pursuant to Rule 65(c) ... 36

Conclusion ......................................................................................................................... 38

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page**

*13th Reg'l Corp. v. U.S. Dep't of Interior,*
    654 F.2d 758 (D.C. Cir. 1980) ........................................................................... 27

*AARP v. U.S. Equal Employment Opportunity Comm'n,*
    226 F. Supp 3d 7 (D.D. C 2016) ..................................................................... 31

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.,*
    357 F.3d 62 (D.C. Cir. 2004) ........................................................................... 17

*Almaqrami v. Pompeo,*
    933 F.3d 774 (D.C. Cir. 2019) ........................................................................... 8

*Alphapointe v. Dep't of Veterans Affairs,*
    475 F. Supp. 3d 1 (D.D.C. 2020) ................................................................... 16-17

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.,*
    121 F.4th 1314 (D.C. Cir. 2024) ................................................................... 30-31

*Am. Ass'n of Univ. Professors v. Dep't of Just.,*
    Civ. A. No. 25-2429, 2025 WL 1684817 (S.D.N.Y. June 16, 2025) .............. 34-35

*Am. Chemistry Council v. Dep't of Transp.,*
    468 F.3d 810 (D.C. Cir. 2006) ........................................................................... 11

*Am. Legal Found. v. FCC,*
    808 F.2d 84 (D.C. Cir. 1987) ........................................................................... 13

*Am. Nat'l Ins. Co. v. FDIC,*
    642 F.3d 1137 (D.C. Cir. 2011) ........................................................................... 6

*Apex, Inc. v. FDA,*
    449 F.3d 1249 (D.C. Cir. 2006) ........................................................................... 29

*Appropriations Clause, Harrington v. Bush,*
    553 F.2d 190 (D.C. Cir. 1977) ........................................................................... 8

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................... 6, 7

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.,*
    502 U.S. 32 (1991) ........................................................................... 25

*Bd. of License Comm'rs of Town of Tiverton v. Pastore,*
    469 U.S. 238 (1985) ........................................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................. 6

*Biovail Corp. v. FDA*,
  448 F. Supp. 2d 154, (D.D.C. 2006) ....................................... 29

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ................................................................. 20

*Bublitz v. Brownlee*,
  309 F. Supp. 2d 1 (D.D.C. 2004) ....................................... 17-18

*Carroll v. Office of Fed. Contract Compliance Programs, Dep't of Labor*,
  235 F. Supp. 3d 79 (D.D.C. 2017) ........................................... 28

*Chaplaincy of Full Gospel Churches v. England*,
  454 F. 3d 290 (D.C. Cir. 2006) ....................................... 29, 30

*City of Houston v. HUD*,
  24 F.3d 1421 (D.C. Cir. 1994) ................................................. 9

*CityFed Fin. Corp. v. Off. of Thrift Supervision*,
  58 F.3d 738 (D.C. Cir. 1995) ................................................... 29

*Citizens for Responsibility & Ethics in Wash. v. Trump*,
  924 F.3d 602 (D.C. Cir. 2019) ................................................. 27

*Citizens for Responsibility & Ethics in Wash. v. U.S. Off. of Special Counsel*,
  480 F. Supp. 3d 118 (D.D.C. 2020) ......................................... 14

*Clinton v. Jones*,
  520 U.S. 681 (1997) ................................................................. 24

*Coal. for Humane Immigrant Rts. v. Dep't of Homeland Sec.*,
  Civ. A. No. 25-0943(TNM), 2025 WL 1078776 (D.D.C. Apr. 10, 2025) ........... 10, 12, 13-14

*Commissioned Officers Ass'n of United States Pub. Health Serv. v. Bunch*,
  Civ. A. No. 21-853 (JDB), 2022 WL 951271 (D.D.C. Mar. 30, 2022) ............. 13

*Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*,
  313 F. Supp. 3d 285 (D.D.C. 2018) ......................................... 11

*Connecticut v. Dep't of Interior*,
  344 F. Supp. 3d 279 (D.D.C. 2018) ......................................... 28

*Conservation Force, Inc. v. Jewell*,
  733 F.3d 1200 (D.C. Cir. 2013) ................................................. 9

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
  38 F.4th 1099 (D.C. Cir. 2022) ....................................... 17, 18

*Ctr. for Auto Safety v. Dole*,
    846 F.2d 1532 (D.C. Cir. 1988) ........................................................ 21

*Ctr. for Biological Diversity v. Nishida*,
    Civ. A. No. 21-119 (RDM), 2021 WL 827189 (D.D.C. Mar. 4, 2021) ................................. 11

*DCH Reg'l Med. Ctr. v. Azar*,
    925 F.3d 503 (D.C. Cir. 2019) ........................................................ 25

*Dep't of Educ. v. California*,
    604 U.S. 650 (2025) ........................................................ 16, 33

*Diakanua v. Rubio*,
    Civ. A. No. 24-1027 (TJK), 2025 WL 958271 (D.D.C. Mar. 31, 2025) ................................. 28

*Doe v. Mattis*,
    889 F.3d 745 (D.C. Cir. 2018) ........................................................ 29

*DSE, Inc. v. United States*,
    169 F.3d 21 (D.C. Cir. 1999) ........................................................ 37

*Elm 3DS Innovations LLC v. Lee*,
    Civ. A. No. 16-1036, 2016 WL 8732315 (E.D. Va. Dec. 2, 2016) ................................. 20

*FedEx v. Dep't of Comm.*,
    39 F.4th 756 (D.C. Cir. 2022) ........................................................ 26

*Fisheries Survival Fund v. Jewell*,
    236 F. Supp. 3d 332 (D.D.C. 2017) ........................................................ 29

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ........................................................ 9, 14

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ........................................................ 12, 13

*Franklin-Mason v. Mabus*,
    742 F.3d 1051 (D.C. Cir. 2014) ........................................................ 16

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ........................................................ 24

*Friends of Animals v. Jewell*,
    828 F.3d 989 (D.C. Cir. 2016) ........................................................ 10

*Garcia v. Vilsack*,
    563 F.3d 519 (D.C. Cir. 2009) ........................................................ 20

*Griffith v. FLRA*,
    842 F.2d 487 (D.C. Cir. 1988) ........................................................ 25

*Guedes v. ATF*,
 920 F.3d 1 (D.C. Cir. 2019) ........................................................................... 8

*Guttenburg v. Emery*,
 26 F. Supp. 3d 88 (D.D.C. 2014) ................................................................. 32

*Harris Cnty., Texas v. Kennedy*,
 786 F. Supp. 3d 194 (D.D.C. 2025) ....................................................... 23, 24

*Heckler v. Chaney*,
 470 U.S. 821 (1985) ...................................................................................... 21

*Herbert v. Nat'l Acad. of Scis.*,
 974 F.2d 192 (D.C. Cir. 1992) ........................................................................ 6

*Hunt v. Wash. State Apple Advert. Comm'n*,
 432 U.S. 333 (1977) ...................................................................................... 10

*In re Cheney*,
 406 F.3d 723 (D.C. Cir. 2005) ...................................................................... 27

*In re Microsoft Corp. Antitrust Litig*,
 333 F.3d 517 (4th Cir. 2003) ......................................................................... 35

*Info. Ctr. v. Presidential. Advisory Comm'n on Election Integrity*,
 878 F.3d 371 (D.C. Cir. 2017) ...................................................................... 12

*Ingersoll-Rand Co. v. United States*,
 780 F.2d 74 (D.C. Cir. 1985) ........................................................................ 17

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Donovan*,
 746 F.2d 855 (D.C. Cir. 1984) ...................................................................... 22

*Jenkins v. Howard Univ.*,
 123 F.4th 1343 (D.C. Cir. 2024) ................................................................... 16

*Katz v. Georgetown Uni.*,
 246 F.3d 685 (D.C. Cir. 2001) ...................................................................... 29

*Kidwell v. Dep't of the Army, Board for Correction of Military Records*,
 56 F.3d at 284 ................................................................................................ 17

*Kim v. FINRA*,
 698 F. Supp. 3d 147 (D.D.C. 2023) .............................................................. 32

*Leedom v. Kyne*,
 358 U.S. 184 (1958) ................................................................................ 24, 25

*Lincoln v. Vigil*,
 508 U.S. 182 (1993) ................................................................................ 21, 22

*Lovitsky v. Trump,*
    949 F.3d 753 (D.C. Cir. 2020) ........................................................... 27

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................... 6, 10

*Madsen v. Women's Health Ctr., Inc.,*
    512 U.S. 753 (1994) ..................................................................... 35

*Match-EBe-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
    567 U.S. 209 (2012) ..................................................................... 16

*Mdewakanton Sioux Indians of Minn. v. Zinke,*
    264 F. Supp. 3d 116 (D.D.C. 2017) ................................................. 28

*Megapulse, Inc. v. Lewis,*
    672 F.2d 959 (D.C. Cir. 1982) ...................................................... 17

*Mexichem Specialty Resins, Inc. v. EPA,*
    787 F.3d 544 (D.C. Cir. 2015) ...................................................... 30

*Morrison v. Olson,*
    487 U.S. 654 (1988) ..................................................................... 24

*Munaf v. Geren,*
    553 U.S. 674 (2008) ....................................................................... 7

*Munsell v. Dep't of Agric.,*
    509 F.3d 572 (D.C. Cir. 2007) ........................................................ 9

*National Institutes of Health v. American Public Health Association,*
    145 S. Ct. 2658 (2025) ............................................................. 32, 33

*Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.,*
    Civ. A. No. 15-1582 (APM), 2016 WL 420470 (D.D.C. Jan. 22, 2016) .............. 30

*Neb. Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.,*
    435 F.3d 326 (D.C. Cir. 2006) ...................................................... 35

*Nken v. Holder,*
    556 U.S. 418 (2009) .......................................................... 7, 32, 36

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) ....................................................................... 35

*Nuclear Regul. Comm'n v. Texas,*
    605 U.S. 665 (2025) ................................................................. 25, 26

*Nyunt v. Chairman, Broad. Bd. of Governors,*
    589 F.3d 445 (D.C. Cir. 2009) ...................................................... 25

*Off. of Pers. Mgmt. v. Richmond*
    496 U.S. 414 (1990) ........................................................................................... 8

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
    810 F.3d 631, 636 (9th Cir. 2015) ................................................................... 35

*Palisades Gen. Hosp. v. Leavitt*,
    426 F.3d 400 (D.C. Cir. 2005) ......................................................................... 36

*Papasan v. Allain*,
    478 U.S. 265 (1986) .......................................................................................... 7

*People for Ethical Treatment of Animals v. U.S. Dep't of Agric.*,
    797 F.3d 1087 (D.C. Cir. 2015) .................................................................. 10, 12

*Perry Capital LLC v. Mnuchin*,
    864 F.3d 591 (D.C. Cir. 2017) ............................................................. 17, 19, 20

*PETA v. U.S. Fish & Wildlife Serv.*,
    59 F. Supp. 3d 91 (D.D.C. 2014) ..................................................................... 28

*PPG Indus., Inc. v. United States*,
    52 F.3d 363 (D.C. Cir. 1995) ........................................................................... 36

*Printz v. United States*,
    521 U.S. 898 (1997) ........................................................................................ 24

*Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. U.S. Dep't of Agric.*,
    573 F. Supp. 3d 324 (D.D.C. 2021) ............................................................ 14, 15

*Reyes v. SBA*,
    Civ. A. No. 22-6765, 2024 WL 1195051 (S.D.N.Y. Mar. 19, 2024) ............ 22, 23

*Riley v. Bondi*,
    No. 23-1270, 2025 WL 1758502 (U.S. June 26, 2025) .................................... 19

*Rochester Pure Waters Dist. v. EPA*,
    960 F.2d 180 (D.C. Cir. 1992) ........................................................................... 9

*Sharifymoghaddam v. Blinken*,
    Civ. A. No. 23-1472, 2023 WL 8047007 (D.D.C. Nov. 17, 2023) ..................... 28

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) ........................................................................... 7

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) ..................................................................... 10-11

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .......................................................................................... 19

*Swan v. Clinton,*
    100 F.3d 973 (D.C. Cir. 1996) ............................................................................ 27

*Tanner-Brown v. Burgum,*
    Civ. A. No. 21-565 (RC), 2025 WL 2719010 (D.D.C. Sept. 24, 2025) ................................ 11

*Thomas v. Principi,*
    394 F.3d 970 (D.C. Cir. 2005) .............................................................................. 6

*Trudeau v. Federal Trade Comm'n,*
    456 F.3d 178 (D.C. Cir. 2006) ............................................................................ 29

*Turlock Irrigation Dist. v. FERC,*
    786 F.3d 18 (D.C. Cir. 2015) ........................................................................ 13, 14

*U.S. Chamber of Com. v. EPA,*
    642 F.3d 192 (D.C. Cir. 2011) ............................................................................ 11

*U.S. Conf. of Cath. Bishops v. Dept of State,*
    770 F. Supp. 3d 155 (D.D.C. 2025) ................................................................... 18, 34

*United States v. Texas,*
    599 U.S. 670 (2023) ......................................................................................... 9

*Vera Inst. of Just. v. Dep't of Just.,*
    Civ. A. No. 25-1643 (APM), 2025 WL 1865160 (D.D.C. July 7, 2025) .................. 18, 19, 26

*Versata Dev. Corp. v. Rea,*
    959 F. Supp. 2d 912 (E.D. Va. 2013) .................................................................... 20

*W. Va. Ass'n of Cmty. Health Centers, Inc. v. Heckler,*
    734 F.2d 1570 (D.C. Cir. 1984) ......................................................................... 8-9

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................................ 7

*Wis. Gas Co. v. FERC,*
    758 F.2d 669 (D.C. Cir. 1985) ................................................................... 29, 30, 31

**Statutes, Rules, Regulations, and Other Authorities**

U.S. Const. art. I, § 8, cl. 1 ................................................................................ 23

U.S. Const. art. I, § 9, cl. 7 .................................................................................. 8

U.S. Const. art. II, § 3 ...................................................................................... 24

U.S. Const. art. III, § 2, cl. 1 ............................................................................... 7

5 U.S.C. § 701 ................................................................................... 19, 20, 21, 22

5 U.S.C. § 702 ................................................................................................ 16

5 U.S.C. § 704 ............................................................................................19, 20

5 U.S.C. § 706 ................................................................................................ 21, 35

20 U.S.C. § 1070a-11 ........................................................................................ 1, 3

28 U.S.C. § 1361 ................................................................................................. 26

28 U.S.C. § 1491 ................................................................................................. 17

31 U.S.C. § 1341 ................................................................................................... 8

34 C.F.R. § 75.500 ............................................................................................. 4, 5

34 C.F.R. § 646.24 ............................................................................................... 3

89 Fed. Reg. 35,080 ..................................................................................... 3, 18, 26

Fed. R. App. P. 8 ................................................................................................ 36

Fed. R. Civ. P. 65 ........................................................................................... 36, 37

Fed. R. Civ. P. 12 ............................................................................................ 6, 20

*Article III Limits on Statutory Standing*, 42 Duke L. J. 1219, 1220 (1993 ................... 10

Defendants U.S. Department of Education and Linda McMahon, in her official capacity as Secretary of the Department of Education (collectively, the "Department"), by and through their undersigned counsel, move to dismiss this action pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). In addition, Defendants oppose the motion for a preliminary injunction (ECF No. 2) filed by Plaintiff Council for Opportunity in Education ("Plaintiff").

## BACKGROUND

## I.    <u>Statutory Background</u>

The Federal TRIO programs, including the Student Support Services, Educational Opportunity Centers, Ronald E. McNair Postbaccalaureate Achievement, Talent Search, Training Program for Federal TRIO Programs Staff, Upward Bound, Upward Bound Math-Science, and Veterans Upward Bound programs ("Federal TRIO Programs"), collectively, provide "grants and contracts designed to identify qualified individuals from disadvantaged backgrounds, to prepare them for a program of postsecondary education, to provide support services for such students who are pursuing programs of postsecondary education, to motivate and prepare students for doctoral programs, and to train individuals serving or preparing for service in programs and projects so designed." Declaration of Christopher McCaghren ("McCaghren Decl.") ¶ 4 (citing 20 U.S.C. § 1070a-11). The Federal TRIO Programs are authorized under the Higher Education Act of 1965, as amended ("HEA"), under Title IV, Part A, Subpart 2, Chapter 1. 20 U.S.C. §§ 1070a-11 - 1070a-18. *Id.* The Federal TRIO Programs were most recently amended through the Higher Education Opportunity Act, Pub. L. No. 110 315, § 403(e)(4)(B), 122 Stat. 3078 (2008). *Id.*

## A.    **Fiscal Year 2025 TRIO Appropriations**

The Full-Year Continuing Appropriations and Extensions Act, 2025 ("2025 CR"), under Section 1101, provided funding for Education under the same "level ... authority and conditions provided in applicable appropriations Acts for fiscal year 2024." McCaghren Decl. ¶ 5 (cleaned

up). This included extending funding under the amounts, authority and conditions authorized under the "Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act, 2024 (division D of Public Law 118-47)." *Id.* (citing Pub. L. 119-4, 139 Stat. 9, 11 (Mar. 15, 2025)).

The Further Consolidated Appropriations Act of 2024 (the "2024 Appropriations Act") Higher Education account provided $3,283,296,000 "for carrying out, to the extent not otherwise provided, titles II, III, IV, V, VI, VII, and VIII of the HEA, the Mutual Educational and Cultural Exchange Act of 1961, and section 117 of the Perkins Act." McCaghren Decl. ¶ 6. The Federal TRIO Programs, as authorized under Title IV, Part A, Subpart 2 of the HEA, were thus funded under this Higher Education account. *Id.* The FY 2024 funding for the Federal TRIO programs was recommended as $1,191,000,000.[1] *Id.* Because the 2025 CR provided funding for Education at the same level as FY 2025, the FY 2025 Federal TRIO Programs appropriation was also recommended as $1,191,000,000. *Id.* And, $1,190,999,999.08 of the $1,191,000,000 recommended appropriation for the Federal TRIO programs was obligated during FY 2025. *Id.* ¶ 7. The remaining balance of $0.92 available to the Federal TRIO programs for FY 2025 lapsed on September 30, 2025. *Id.* No funds remain available from the FY 2025 appropriation for the Federal TRIO programs at present, *id.* ¶ 8, and funding for FY 2026 for the Federal TRIO programs has not yet been provided through any applicable appropriations act and would be contingent upon the terms of such appropriations, *id.* ¶ 9.

---

[1]     As referenced in the Conference Report accompanying the 2024 Appropriations Act (https://www.appropriations.senate.gov/imo/media/doc/fy_24_lhhs_report.pdf).

**B.    FY 2025 Student Support Services ("SSS") New Awards**

On May 1, 2024, the Department published a Notice Inviting Applications in the Federal Register for the FY 2025 SSS program. 89 Fed. Reg. 35,080.  The deadline for transmittal of applications under each notice was July 15, 2024.  McCaghren Decl. ¶ 10.  The Department received 1,702 applications seeking FY 2025 new awards under the SSS program.  *Id.*

The Notice Inviting Applications stated that many Department regulations applied and governed the selection of new awardees in the program. This included 34 C.F.R. part 75 with the exception of 34 C.F.R. §§ 75.215 through 75.221. McCaghren Decl. ¶ 11.  As with many Department grant programs, the Department informs its selection of applications in its grant programs by using non-Federal peer reviewers.  *Id.* ¶ 12.  Those peer reviewers score the timely and properly submitted applications under a series of selection criteria, additional priority points, and prior experience points.  *Id.* (citing 34 C.F.R. § 646.21).  SSS also includes a secondary review process for those applications which applicants feel were mishandled or improperly scored in some context under 34 C.F.R. § 646.24.  McCaghren Decl. ¶ 12.  The Secretary's determination of whether the applicant has met the requirements for a second review and the Secretary's decision on re-scoring of an application are final and not subject to further appeal or challenge.  *Id.* (citing 34 C.F.R. §646.24(e)(1)).

The Department initially made nine hundred and sixty-two new awards from the FY 2025 competition for the SSS program on or about July 4, 2025 ("first SSS slate").  McCaghren Decl. ¶ 13.  Consistent with the statutory and regulatory requirements that the Department establish a funding band and offer a second review to certain unsuccessful applications within that funding band (*see* 20 U.S.C. § 1070a-11(c)(8)(C); 34 C.F.R. § 646.24(d)), the Department later made an additional one hundred and fifty-one new awards from the FY 2025 competition under the SSS

Program, resulting from the second review process and/or correcting administrative errors on the first SSS slate.  McCaghren Decl. ¶ 13.

At the same time that the nine hundred and sixty-two new award decisions were communicated under the first SSS slate, the Department notified twenty-five applicants that they had not been selected for funding based on the Department's review for potential conflicts with applicable nondiscrimination requirements. 34 C.F.R. § 75.500.  McCaghren Decl. ¶ 14.  This included notification to the members identified by Plaintiff: Big Bend Community College (P042A251037; P042A251043), Green River College (P042A250499); and the Board of Trustees of Southern Illinois University[2] (P042A251278).  *Id*.

Of the nine hundred and sixty-two new awards made under the first SSS slate, Green River College successfully competed and received a new award under their SSS Science, Technology, Engineering, and Mathematics (STEM) application (P042A250500).  *Id*. ¶ 15.

The notices of non-selection sent to the twenty-five applicants, referenced in paragraph 10 above, each referenced an electronic page number, identifying the location of the application material identified for potential conflicts with applicable nondiscrimination requirements. McCaghren Decl.  ¶ 16.  This electronic page number should correspond to the consolidated electronic application that is received by the Department when an applicant applies through Grants.gov.  *Id*.  The Department, however, acknowledged that applicants may not have continued access to their consolidated electronic application within Grants.gov, and thus nor to the corresponding electronic page numbers referenced in the Department's notices of non-selection. *Id*.

---

[2]    This institution is referred to as "South Illinois University-Carbondale" within the Complaint.

## II.    **Procedural Background**

In July 2025, the Department notified twenty-five applicants that they had not been selected for funding based on the Department's review for potential conflicts with applicable nondiscrimination requirements, 34 C.F.R. § 75.500.  McCaghren Decl. ¶¶ 13, 14.  This included notification to the members identified by Plaintiff: Big Bend Community College (P042A251037; P042A251043), Green River College (P042A250499); and the Board of Trustees of Southern Illinois University (P042A251278).  *Id.* ¶ 15.  On September 30, 2025, Plaintiff[3] filed a Complaint for Declaratory, Injunctive and Mandamus Relief (ECF No. 1) and a Motion for Preliminary Injunction (ECF No. 2).  Plaintiff asserts the following Seven Counts for relief:  Counts I-V for various violations of the Administrative Procedures Act; Count VI asserts a violation of the Separation of Powers Doctrine under the U.S. Constitution; and Count VII requests a Writ of Mandamus.

---

[3]    Plaintiff is the sole nonprofit membership organization in the United States for the TRIO community and is comprised of 10 Regional Associations:  (1) The Western Association of Educational Opportunity Programs (WESTOP) which consists of 6 chapters in each of the western states; (2) the Association for Equality and Excellence in Education, Inc., (AEEE), which has 2 Chapters (N.Y and N.J.); (3) The Association of Special Programs In Region Eight, Inc. (ASPIRE), which has 6 chapters in each of the Mountain West region states; (4) the Caribbean Association of Educational Opportunity Programs (CAEOP) which has 2 Chapters (P.R. and U.S.V.I.); (5) the Educational Opportunity Association (EOA), which has 10 chapters in each of the mid-western states.  EOA has a membership base of approximately 1155 members in the 10-state region and is arguably the largest in the nation.  *See* eoa.wildapricot.org/page-18218 (last accessed November 6, 2025; (6) Mid-Eastern Association of Educational Opportunity Program Personnel (MEAEOPP) with 6 chapters; (7) Northwest Association of Educational Opportunity Programs (NAEOP) with 4 chapters; (8) New England Educational Opportunity Association (NEOA) with 6 chapters in the New England states; (9) Southeastern Association of Educational Opportunity Program Personnel (SAEOPP) with 8 chapters; (10) Southwest Association of Student Assistance Programs (SWASAP), with 5 chapters. There are more than 1,000 colleges, universities within these regional associations.    *See* Compl., at ¶ 6; https://coenet.org/our-affiliates/#:~:text=The%20Western%20Association%20of%20Educational,and%20Southern%20California%20(SoCal) (last accessed November 6, 2025).

As demonstrated further, the Plaintiff is not likely to succeed on the merits because its claims are essentially contractual, and therefore, jurisdiction lies exclusively in the Court of Federal Claims. And while the district court may have jurisdiction over the grantees' constitutional claims brought under the Administrative Procedure Act ("APA"), those claims are meritless. Moreover, the equities strongly favor the government, which on behalf of the public must ensure the proper oversight and management of this multi-million-dollar fund. Accordingly, Plaintiff's Motion for Preliminary Injunction must be denied and its complaint dismissed.

## LEGAL STANDARDS

### I.    Rule 12(b)(1)

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### II.    Rule 12(b)(6)

Under Rule 12(b)(6), the Court may dismiss a complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as

true, and all inferences are viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678. However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## III.  Preliminary Injunction

A preliminary injunction is an "extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). To warrant relief, the movant must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). The third and fourth factors of the analysis—harm to others and the public interest— "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**ARGUMENT**

## I.  This Action Should be Dismissed on Numerous Grounds.

### A.  This Court Does Not Have Jurisdiction Over Plaintiff's Claims.

#### 1.  This Matter is Moot.

The Court should dismiss this matter because Plaintiff's claims are moot. Article III of the Constitution limits a federal court's jurisdiction to deciding "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "A lawsuit becomes moot—and is therefore no longer a 'Case' or 'Controversy'—when the issues presented are no longer live or the parties lack a legally cognizable

interest in the outcome." *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019) (quotation marks omitted). "A case is moot if [the court's] decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Guedes v. ATF*, 920 F.3d 1, 12 (D.C. Cir. 2019) (quotation marks omitted). In other words, mere "speculative contingencies" lacking in "immediacy and reality" do not suffice to prevent a claim from becoming moot. *Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985) (quotation marks omitted).

The Appropriations Clause provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. This "means simply that no money can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990) (quotation marks omitted). Congress has "implement[ed]" the Appropriations Clause, *Harrington v. Bush*, 553 F.2d 190, 195 (D.C. Cir. 1977), through the Anti-Deficiency Act, which provides that federal agencies "may not…make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1)(A).

The FY 2025 Federal TRIO Programs appropriation was recommended as $1,191,000,000. McCaghren Decl. ¶ 6. $1,190,999,999.08 of the $1,191,000,000 recommended appropriation for the Federal TRIO programs was obligated during FY 2025, and the remaining balance of $0.92 available to the Federal TRIO programs for FY 2025 lapsed on September 30, 2025. *Id.* ¶ 7. No funds remain available from the FY 2025 appropriation for the Federal TRIO programs at present, *id.* ¶ 8, and thus this matter is moot.[4] *See W. Va. Ass'n of Cmty. Health Centers, Inc. v. Heckler*,

---

[4]    Also, as of this filing, funding for FY 2026 for the Federal TRIO programs has not yet been provided through any applicable appropriations act and would be contingent upon the terms of such appropriations. McCaghren Decl. ¶ 9.

734 F.2d 1570, 1572 (D.C. Cir. 1984) (claims "with respect to fiscal year 1983 funding are now moot, inasmuch as all such funds have been awarded and disbursed").   Plaintiff cannot avoid mootness by asking this Court to order the Department to "hold funds" or continue funding using funds that Congress did not appropriate, as "[i]t is a well-settled matter of constitutional law that when an appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation." *City of Houston v. HUD*, 24 F.3d 1421, 1424 (D.C. Cir. 1994); *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 184 (D.C. Cir. 1992) ("It is beyond dispute that a federal court cannot order the obligation of funds for which there is no appropriation.").

Accordingly, the Court should dismiss this case for a lack of jurisdiction.  And because Plaintiff's member's claims are moot, so too are the same claims raised by Plaintiff in their capacity as representatives of those members.  *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1205 (D.C. Cir. 2013); *see also Munsell v. Dep't of Agric.,* 509 F.3d 572, 584 (D.C. Cir. 2007) (holding that, when an association sues on behalf of its members, its claims become moot if its members' claims become moot).

### 2.    Plaintiff Lacks Standing.

Standing is a "bedrock constitutional requirement." *United States v. Texas*, 599 U.S. 670, 675 (2023).  It requires that a plaintiff "possess a personal stake" in the outcome, which "helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024).  Standing doctrine thus "serves to protect the 'autonomy' of those who are most directly affected so that they can decide whether and how to challenge the defendant's action." *Id.* at 379–80.  The standing doctrine further ensures that "'the Framers' concept of the proper—and properly limited—role of the courts in a democratic society' is vindicated, by ensuring decisions meant for the political process are left

to the political process." *Coal. for Humane Immigrant Rts. v. Dep't of Homeland Sec.*, Civ. A. No. 25-0943 (TNM), 2025 WL 1078776, at *4 (D.D.C. Apr. 10, 2025) (quoting John Roberts, *Article III Limits on Statutory Standing*, 42 Duke L. J. 1219, 1220 (1993)).

Under any theory of standing, "the irreducible constitutional minimum" requires that, (1) the plaintiff have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there must exist "a causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Animals v. Jewell*, 828 F.3d 989, 991–92 (D.C. Cir. 2016) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Membership-based associations like Plaintiff can establish standing in one of two ways: they can assert "associational standing" to sue on behalf of their members, *see Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977), or "organizational standing" to sue on behalf of themselves, *see People for Ethical Treatment of Animals v. U.S. Dep't of Agric. ("PETA")*, 797 F.3d 1087, 1093 (D.C. Cir. 2015).

In this case, it appears that Plaintiff brings this action on behalf of itself and its purported affected members. Compl. (ECF No. 1) ¶¶ 224–47; Pl.'s Mot. (ECF No. 2) at 14–19. As discussed further below, Plaintiff, however, fails to demonstrate associational standing on behalf of the unidentified members and sufficiently allege organizational standing.

(a) Plaintiff Fails to Demonstrate Associational Standing for Unidentified Members.

To show associational standing, an organization must demonstrate that "(1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit." *Sierra Club v.*

*EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).  Also, "[w]hen a petitioner claims associational standing, it is not enough to aver that unidentified members have been injured."  *U.S. Chamber of Com. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011).  "Rather, the petitioner must specifically 'identify members who have suffered the requisite harm.'"  *Id.* (quoting *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 815,820 (D.C. Cir. 2006); *Ctr. for Biological Diversity v. Nishida*, Civ. A. No. 21-119 (RDM), 2021 WL 827189, at *2 (D.D.C. Mar. 4, 2021) (finding "[t]he associational-standing doctrine demands more" where organizational plaintiff failed to identify "who specifically will suffer harm–and when, how, or why they will suffer it"); *Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*, 313 F. Supp. 3d 285, 299 (D.D.C. 2018) ("[Plaintiff] fails to identify in its complaint which particular member of the organization has been harmed. . . . In this way, the complaint runs afoul of the baseline requirement to identify a particular member of the organization that was injured.").  And conclusory, general reference to unidentified representatives is legally insufficient.  *See Tanner-Brown v. Burgum*, Civ. A. No. 21-565 (RC), 2025 WL 2719010, at *5 (D.D.C. Sept. 24, 2025) *appeal filed,* No. 25-5374 (D.C. Cir. Oct. 22, 2025).

Here, Plaintiff states "[a]mong COE's members are colleges and universities that applied to the Department in 2024 for new SSS grants that were denied by the Department in 2025.  These members and their individual SSS programs (the "Non-selected SSS Programs")  have been directly harmed by the Department's denial of their applications for new grants (the "Applications")."  Compl. (ECF No. 1) ¶ 11.  Plaintiff, however, has only identified in either its complaint or motion, the following purported members: (1) South Illinois University-Carbondale; (2) Green River College; and (3) Big Bend Community College.  *See, e.g., id.* ¶¶ 172, 234; *see also, e.g.,* Pl.'s Mot. (ECF No. 2) at 7, 17–18; Pl's Exs. 2–4 (ECF Nos. 2-2 to 2-4).  Plaintiff has

failed to identify all specific members, if any more exist, who have been allegedly harmed by Defendants' actions and Defendants should not have to speculate about the remaining members, if any. Therefore, Plaintiff has failed to demonstrate associational standing for any unidentified members and all claims, to the extent they are not dismissed for the other grounds mentioned herein, and relief should be limited to only those members who have been identified, and Defendants have been put on notice of.

(b) <u>Plaintiff Fails to Demonstrate Organizational Standing.</u>

Any attempt by Plaintiff to establish organizational standing fares no better. To establish organizational standing, a plaintiff must demonstrate "that the defendant's actions cause a 'concrete and demonstrable injury to the organization's activities' that is 'more than simply a setback to the organization's abstract social interests.'" *Elec. Priv. Info. Ctr. v. Presidential. Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (cleaned up). "For an organizational plaintiff to demonstrate that it has suffered an injury in fact, it must show 'more than a frustration of its purpose,' since mere hindrance to a nonprofit's mission 'is the type of abstract concern that does not impart standing.'" *Coal. for Humane Immigrant Rts*, 2025 WL 1078776, at *4 (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (cleaned up)). Thus, to determine whether a plaintiff's allegations are sufficient to convey organizational standing, a court must find that the plaintiff satisfied two prongs: (1) the defendants' "action or omission . . . injured [the plaintiff's] interest;" and (2) that the plaintiff "used its resources to counteract that harm." *Elec. Priv. Info. Ctr.*, 878 F.3d at 378 (quoting *PETA*, 797 F.3d at 1094). Both prongs must be satisfied—if an organization fails one part of the inquiry, a court need not address the other. *id.*

In term of the first prong, to state a sufficient injury to its interest, an organization must allege that "the defendant's conduct perceptibly impaired the organization's ability to provide

services." *Food & Water Watch*, 808 F.3d at 919 (quoting *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015)). This could include showing that the challenged conduct "cause[d] an 'inhibition of [the organization's] daily operations," *id.* (second alteration in original) (quoting PETA, 797 F.3d at 1094), or that "discrete programmatic concerns are being directly and adversely affected by the defendant's actions," *Am. Legal Found. v. FCC*, 808 F.2d 84, 92 (D.C. Cir. 1987).

Here, Plaintiff alleges that "[t]he Department's actions against the Non-selected SSS Programs are directly adverse to [Plaintiff's] core mission of ensuring all students have an equal opportunity to access postsecondary education," "[t]he Department's abrupt and unlawful change of position has caused [Plaintiff] to expend additional resources on new counseling and training to SSS programs as to the Department's new policies," and "the Department has discontinued COE's own Staff Training grant that funded its training of SSS program staff." Compl. (ECF No. 1) ¶ 229; Pl.'s Mot. (ECF No. 2) at 15–16. Nothing alleged in the complaint or Plaintiff's motion supports the conclusion that the Department's actions have perceptively impaired Plaintiff's ability to provide services. Simply put, there is no claim that the Department is blocking Plaintiff from carrying out its mission. "Conflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing." *Commissioned Officers Ass'n of United States Pub. Health Serv. v. Bunch*, Civ. A. No. 21-853 (JDB), 2022 WL 951271, at *5 (D.D.C. Mar. 30, 2022) (citation omitted). "Frustration of an organization's objectives is the type of abstract concern that does not impart standing nor is a mere setback to [the organization's] abstract social interests…sufficient," *id.* (citations and internal quotations omitted). And Plaintiff does not demonstrate organizational standing due to the mere fact that Defendants actions may make it "more difficult" for some but not necessarily all their operations. *See Coal. For Humane*

*Immigrant Rts.*, 2025 WL 1078776, at *6 (organizational standing not satisfied where challenged government action merely "has made [] advocacy efforts more difficult to achieve" (cleaned up)).

If the first prong was not already fatal to Plaintiff's organizational standing, Plaintiff also fails the second prong. Plaintiff states it "has dedicated enormous time, money, and resources to ensure that the Department adheres to the governing law and regulations applicable to TRIO," "pocketbook injuries," and "has diverted resources away from its core business activities of supporting and expanding TRIO programs to address the Department's action." Compl. (ECF No. 1) ¶ 227; Pl.'s Mot. (ECF No. 2) at 15–16. Not all use of resources, however, will meet the second part of the test. *Citizens for Responsibility & Ethics in Wash. ("CREW") v. U.S. Off. of Special Counsel*, 480 F. Supp. 3d 118, 128 (D.D.C. 2020). "The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." *Turlock Irr. Dist.*, 786 F.3d at 24 (citing *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995)). This is no different from the sort of diversion-of-resources harm the Supreme Court has made clear is not sufficient for standing. *Food & Drug Admin v. Alliance for Hippocratic Med.*, 602 U.S. 367, 394-95 (2024). Were it otherwise, every organization that responds to a change in federal policy would have standing, and that "expansive theory" is not the law. *Id.* at 395. Organizations only suffer concrete injury if a challenged government action has made their advocacy efforts "more difficult to achieve, thereby requiring 'operational costs beyond those normally expended to ... educate' about matters that might relate to the organization['s] mission." *Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 573 F. Supp. 3d 324, 343 (D.D.C. 2021) (quoting *Nat'l Taxpayers Union*, 68 F.3d at 1434). Plaintiff has not shown that here.

In addition, Plaintiff also states that "the [Non-selected SSS Programs] are closing down, and the dues they once paid to [Plaintiff] will no longer be paid without relief." Pl.'s Mot. (ECF No. 2) at 15. Plaintiff claims that it has more than 1,000 member colleges, universities, and community-based agencies within its 10 regional associations, *see* Compl. (ECF No. 1) ¶ 8, but has only identified three schools who were denied by the Department in 2025 for a new grant, *see, e.g., id.* ¶¶ 172, 234; *see also, e.g.,* Pl.'s Mot. (ECF No. 2) at 7, 17–18. Also, one of the members that Plaintiff claims was denied a new grant, *i.e.*, Green River College, actually received a new award under their SSS Science, Technology, Engineering, and Mathematics (STEM) application. *See* McCaghren Decl. ¶ 15. Additionally, most of Plaintiff's revenue is not derived from Program Services, but rather from contributions. Only 38.4% of Plaintiff's total revenue or 3,665,145 is derived from Program Services, while 59.4% of its total revenue or $5,669,296 is derived from contributions. *See* https://projects.propublica.org/nonprofits/organizations/521221301 (last accessed Nov. 9, 2025). Some major financial contributors, publicly available, include the following: Lumina Foundation for Education; Ascendium Education Solutions; The California Endowment; Chevron; The David & Lucile Packard Foundation; Central Valley Community Foundation; and CalViva Health. *See* https://www.google.com/search?q=Council+of+Educational+Opportunity+financial+contributors (last accessed Nov. 9, 2025). In light of this information, while Plaintiff may lose some income from its program services, it is clear that Plaintiff has multiple streams of potential income and thus, exaggerates the purported harm. Accordingly, Plaintiff fails to demonstrate organizational standing to bring this action and seek any relief.

3.    Plaintiff's Claims Belong in the Court of Federal Claims.

Any challenges to the denial of the SSS grant applications are not subject to this Court's jurisdiction. Plaintiff's claims are in essence contract claims can only be brought in the Court of

Federal Claims and thus, this Court lacks subject matter jurisdiction.  The proper course here would be for the parties were denied grants to seek appropriate recourse in the Court of Federal Claims—not for Plaintiff, as a non-party, to seek such relief through this suit.

"[T]he party asserting federal jurisdiction . . . has the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C. Cir. 2024) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). To "bring a claim against the United States," the plaintiff must "identify an unequivocal waiver of sovereign immunity." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014).  Plaintiff here asserts claims under the APA.  *See* Compl. (ECF No. 1) ¶¶ 252–314.  Although the APA provides a limited waiver of sovereign immunity for claims "seeking relief other than money damages," 5 U.S.C. § 702, that waiver of sovereign immunity does not apply "'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,'" *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (quoting 5 U.S.C. § 702).  This "important carveout" to the APA's sovereign immunity waiver "prevents plaintiffs from exploiting" that waiver "to evade limitations on suit contained in other statutes."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012).

"[T]he APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money,'" precisely what Plaintiff seeks here.  *See California*, 604 U.S. at 651 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'"  *California*, 604 U.S. at 651 (quoting 28 U.S.C. § 1491(a)(1)).  This jurisdictional barrier exists for good reason because it ensures that contract claims against the federal government are channeled into a court "that possesses expertise in questions of federal contracting law."  *Alphapointe v. Dep't of Veterans Affairs*, 475 F. Supp.

3d 1, 11 (D.D.C. 2020); *see also, e.g., Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

Thus—regardless of how a claim is styled—a district court lacks jurisdiction over that claim if it "is in 'its essence' contractual." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)); *see also Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004). Determining whether a claim "is 'at its essence' contractual"—and therefore falls outside of the APA's waiver of sovereign immunity—"depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (quoting *Megapulse*, 672 F.2d at 968). Applying the *Megapulse* factors here confirms that Plaintiff's claims amount to the very sort of contractual claims for monetary relief against the federal government over which this Court lacks jurisdiction.

To determine whether jurisdiction is proper in the district court, the issue is whether the grantees' claims are essentially contractual. *Megapulse*, 672 F. 2d at 967–68. The fact that the grantees' complaint nowhere mentions breach of contract cannot alone suffice to establish jurisdiction in the District Court. *Ingersoll-Rand*, 780 F.2d at 77. The Tucker Act grants the Court of Federal Claims jurisdiction over suits based on "any express or implied contract with the United States. 28 U.S.C. § 1491(a)(1). Where the equitable relief lacks " 'considerable value' independent of any future potential for monetary relief," *Kidwell v. Dep't of the Army, Board for Correction of Military Records*, 56 F.3d at 284 (quoting *Francis E. Heydt Co. v. United States,* 948 F.2d 672, 677 (10th Cir. 1991)), or when the equitable relief requested in the complaint is "'negligible in comparison' with the potential monetary recovery," *id.* (quoting *Hahn v. United States*, 757 F.2d

581, 589 (3d Cir. 1985)), the complaint will be deemed one for damages. *See Bublitz v. Brownlee*, 309 F. Supp. 2d 1, 6–7 (D.D.C. 2004). Here, the ultimate focus is getting a new five-year SSS grant funded and that means that the equitable relief requested is negligible in comparison to the intended prize, *i.e.*, the award of the grant as the ultimate monetary recovery.

The relief Plaintiff seeks only confirms that its claims are essentially contractual in nature. *See Crowley*, 38 F.4th at 1110 ("We turn next to 'the type of relief sought.'"). Indeed, courts have found this factor "dispositive." *U.S. Conf. of Cath. Bishops v. Dept of State*, 770 F. Supp. 3d 155, 163 (D.D.C. 2025), *appeal dismissed*, No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025). In *U.S. Conf. of Cath. Bishops*, for example, it was determinative that "[t]he nature of the relief the Conference seeks"—an "order [that] the Government . . . stop withholding the money due under the Cooperative Agreements"—"'sounds in contract.'" *Id.* at 163. So too here. Plaintiff seeks an order that Defendants "decisions to deny Plaintiff's Affected Programs' Applications for Student Support Services grants submitted in relation to the Notice Inviting Applications, 89 Fed. Reg. 35,080 (May 1, 2024) are vacated," and that "[a]ny unobligated fiscal year 2025 funds remaining from the $3,080,952,000 that Congress appropriated to the Department's Higher Education budget account as part of the Full-Year Continuing Appropriations and Extensions Act are not to be spent, obligated, or otherwise made unavailable during the pendency of this lawsuit, and such funds will not be considered lapsed as of October 1, 2025," Pl.'s Proposed Order (ECF No. 2-10) ¶¶ (1), (4) 286(h)—i.e., an order that the government keep paying money due under the grant agreements. In other words, "[s]tripped of its equitable flair," Plaintiff "seeks the classic contractual remedy of specific performance." *U.S. Conf. of Cath. Bishops*, 770 F. Supp. 3d at 163 (quoting *Spectrum Leasing*, 764 F.2d at 894); *see also Vera Inst. of Just. v. Dep't of Just.*, Civ. A. No. 25-1643 (APM), 2025 WL 1865160, at *13 (D.D.C. July 7, 2025), *appeal pending*, No. 25-

5248 (D.C. Cir. filed July 10, 2025) (concluding that the plaintiffs seek continued payment of the grants—in other words, specific performance and thus, the remedy sought also marks the claim as essentially contractual). And a request for an order that the government must perform or for "specific performance" on the grant agreements "must be resolved by the Claims Court." *Vera Inst. of Just.*, 2025 WL 1865160, at *13 (citing *Ingersoll-Rand*, 780 F.2d at 80). Thus, the relief factor is also met, and the case should be heard in the Court of Claims.

*    *    *

This Court must determine that it has jurisdiction before proceeding. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), *abrogated on other grounds as stated in Riley v. Bondi*, No. 23-1270, 2025 WL 1758502, at *8 (U.S. June 26, 2025) ("Without jurisdiction the court cannot proceed at all in any cause.") (citation omitted); *see also Perry Cap.*, 864 F.3d at 603 ("Before delving into the merits, we pause to assure ourselves of our jurisdiction, as is our duty."). Defendants argue in the first instance that no judicial review is available here, and the Court must first determine whether it has jurisdiction before proceeding to the other issues raised below.

### B.    Plaintiff Is Not Likely to Prevail on Its APA Claims (Counts I-V).

To the extent the Court determines that it has jurisdiction over this matter, Plaintiff's APA claims are subject to dismissal for three reasons: First, there are adequate alternative remedies available thus precluding Plaintiff's APA challenges, 5 U.S.C. § 704. Second, Defendants' decisions concerning the allotment and expenditure of its lump-sum funding constitute unreviewable agency action "committee to agency discretion by law," *id.* § 701(a)(2). Third, Plaintiff's constitutional claims are not viable under the APA.

1.    Plaintiff's APA Claims Fail Because There Are Adequate Alternative
Remedies Available.

The availability of adequate alternative remedies forecloses Plaintiff's APA claims.  APA review is available only where "there is no other adequate remedy in a court."  5 U.S.C. § 704. The requirement that a party have "no other adequate remedy in court," *id.*, reflects that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).  As the D.C. Circuit has observed, "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'"  *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citation omitted).  Further, a remedy may be adequate even if "the arguments that can be raised [in the alternative proceeding] are not identical to those available in an APA suit."  *Elm 3DS Innovations LLC v. Lee*, Civ. A. No. 16-1036, 2016 WL 8732315, at *6 (E.D. Va. Dec. 2, 2016). If there exists an alternative adequate judicial remedy, a plaintiff lacks a cause of action under the APA.  *Perry Cap.*, 864 F.3d at 621; *see Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912, 927 (E.D. Va. 2013) (dismissing putative APA claim under Rule 12(b)(6) because decision at issue was not a final agency action, and an alternative adequate remedy existed by way of appeal to the Federal Circuit.  As already described above in § I(A)(3), Plaintiff's challenges to the denial of SSS Grant applications are contractual in nature, and therefore the Court of Federal Claims provides an adequate alternative under the Tucker Act.

2.    Plaintiff's APA Claims Are Unreviewable Because the Department's
Decisions to Deny Grant Applications Is Committed to Agency Discretion.

Plaintiff's challenges to the denial of SSS grant applications fail for a separate reason: such a decision concerning how to allocate and expend federal funding is "committed to agency discretion by law" and is thus not subject to APA review.  5 U.S.C. § 701(a)(2).  While the APA establishes a waiver of sovereign immunity and a cause of action for injunctive relief for parties

adversely affected by either final agency action or an agency's failure to act, *id.* §§ 702, 706(1) – (2), the waiver of sovereign immunity is limited.  It does not apply in circumstances where "agency action is committed to agency discretion by law," *id.* § 701(a)(2).  Review under the APA therefore is unavailable "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).  Where the statute does not provide any judicially manageable standard, "regulations promulgated by an administrative agency in carrying out its statutory mandate can provide standards for judicial review." *Ctr. for Auto Safety v. Dole*, 846 F.2d 1532, 1534 (D.C. Cir. 1988).

The Supreme Court has long recognized that an agency's determination of how to allocate appropriated funds among competing priorities and recipients—precisely what Plaintiff challenges here—is classic discretionary agency action. *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993).  In *Lincoln*, the Supreme Court underscored that the APA, by its own terms, "preclude[s] judicial review of certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" *Id.* at 191 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 817 (1992)).  *Lincoln* then held that an agency's "allocation of funds from a lump-sum appropriation" is one such "administrative decision traditionally regarded as committed to agency discretion," given that "the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id.* at 192.  The Court thus concluded that the agency's decision to discontinue a program that was: (1) funded through the agency's yearly lump-sum appropriations from Congress (2) but not otherwise mandated or prescribed by statute was "committed to the [agency's] discretion" and thus "unreviewable" under the APA. *Id.* at 193–94.

- 21 -

Plaintiff's APA claims fail because they seek to challenge decisions quintessentially "committed to agency discretion by law," for which the APA does not provide an avenue for review. 5 U.S.C. § 701(a)(2). An agency's determination of how best to administer appropriated funds to fulfill its legal mandates is classic discretionary agency action. *See Lincoln*, 508 U.S. at 193. Indeed, none of the grant programs at issue in this matter are funded through targeted appropriations, but rather through the lump-sum appropriations that the Department received from Congress. As *Lincoln* made clear, the Department's "allocation of funds" from those lump-sum appropriations to various programs and priorities "requires 'a complicated balance of a number of factors,'" including whether the agency's "'resources are best spent' on one program or another," and "whether a particular program 'best fits the agency's overall policies.'" *Lincoln*, 508 U.S. at 193 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)).

At bottom, any decisions regarding the Department's administration of the grant programs, including interim steps, timing, and the recipients, are squarely committed to agency discretion. *See Lincoln*, 508 U.S. at 193–94; *see also Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Donovan*, 746 F.2d 855, 861 (D.C. Cir. 1984) ("A lump-sum appropriation leaves it to the recipient agency (as a matter of law, at least) to distribute the funds among some or all of the permissible objects as it sees fit."). Defendants' administration and decisions of the grant programs at issue in this matter are "accordingly unreviewable under § 701(a)(2)" of the APA and cannot form the basis for Plaintiff's APA claim. *Lincoln*, 508 U.S. at 193; *cf. Reyes v. SBA*, Civ. A. No. 22-6765, 2024 WL 1195051, at *5–6 (S.D.N.Y. Mar. 19, 2024) (holding that claims regarding the denial of an EIDL grant was unreviewable under the APA because "the word 'may' clearly connotes discretion . . . and [the] SBA's allocation of lumpsum appropriations is typically considered a discretionary act").

3.    Plaintiff's Constitutional Claims (Take Care and Spending Clause) Under the APA Lack Merit (Count V).

Plaintiff attempts to bring a constitutional claim under the APA and insists that the Department has violated the Constitution's Take Care and Spending Clauses. Compl. (ECF No. 1) ¶¶ 301–14. Plaintiff argues that the Department cannot withhold any of the $1.19 billion in fiscal year 2025 funds appropriated by Congress for carrying out the SSS and other TRIO programs based on the Executive Branch's policy objections and is required by law to spend them and cannot avoid spending them merely by delaying action after the fiscal year. *Id.* ¶¶ 313–14; Pl.'s Mot. (ECF No. 2) at 34.

As a threshold matter, Plaintiff claim must be dismissed because Defendants have attested that "$1,190,999,999.08 of the $1,191,000,000 recommended appropriation for the Federal TRIO programs was obligated during FY 2025" and "[t]he remaining balance of $0.92 available to the Federal TRIO programs for FY 2025 lapsed on September 30, 2025." *See* McCaghren Decl. ¶ 7. Simply put, Defendants have complied with their obligations and Plaintiff claims fail at the outset.

Regardless, Spending Clause and Take Care and Spending Clauses claims fail on other grounds. In terms of the Spending Clause, the Spending Clause provides that Congress has the power to "lay and collect Taxes, Duties, Imports, and Excises, to pay the Debts and provide for the common Defense and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. The Constitution vests Congress with the power to pass spending laws and the President with the duty to "faithfully execute[ ]" those laws. *Id.*; *id.* Art. II § 3. That allocation of authority gives Congress the ability to set how the federal government spends its money. *Harris Cnty., Texas v. Kennedy*, 786 F. Supp. 3d 194, 208 (D.D.C. 2025). So, when Congress calls for money to be spent, the President generally must spend it. *Id.* (citing *In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J.); *Train v. City of New York*, 420 U.S. 35, 44 (1975) (holding that if Congress

authorizes some amount, then the President must allot that amount for expenditure). Which is precisely what happened here. Congress has authorized the Department to administer certain grant programs, including those at issue in this case. The funding for the grants at issue were required to be obligated before the end of the fiscal year to prevent any lapses in funding. The Department's administration of the grants was within the bounds of its authority and the Department obligated all funds, except for $0.92 which lapsed on September 30, 2025. McCaghren Decl. ¶ 7. No funds remain available from the FY 2025 appropriation for the Federal TRIO programs at present. *Id.* ¶ 9. Thus, the Department neither withheld nor impounded funds. Therefore, Plaintiff's Spending Clause claim under the APA fails.

In terms of the Take Care Clause, the Constitution vests broad, discretionary authority to "take care that the laws be faithfully executed" by the President. U.S. Const. art. II, § 3. The Plaintiff has not sued the President, and the Take Care Clause provides no basis to review the actions of subordinate Executive Branch officials. The Clause speaks only to the President, not to his subordinates, and ensures that the President is principally responsible for the actions of the Executive Branch and directly accountable to the people through the political process. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492–93 (2010) ("It is *his* responsibility to take care that the laws be faithfully executed."); *id.* at 495–97; *see also Printz v. United States*, 521 U.S. 898, 922 (1997); *Morrison v. Olson*, 487 U.S. 654, 689-90 (1988); *Clinton v. Jones*, 520 U.S. 681, 712–13 (1997) (Breyer, J., concurring). A subordinate Executive officer cannot violate the President's duty to faithfully execute the laws. Thus, Plaintiff may not bring a Take Care Clause claim under the APA.

### C.    Plaintiff's Ultra Vires Claim (Count VI) Fails.

Plaintiff fails to state an *ultra vires* claim. The leading Supreme Court decision on *ultra vires* review is *Leedom v. Kyne*, 358 U.S. 184 (1958), holding that non-statutory review was

available because the agency order "was an attempted exercise of power that had been specifically withheld" and violated a "specific prohibition" in the National Labor Relations Act, *id.* 188–89. To sufficiently allege an *ultra vires* claim, the plaintiff must aver: "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019) (cleaned up).

The *Kyne* exception does not apply simply because an agency has arguably reached "a conclusion which does not comport with the law." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 666 (2025) (citation omitted). Rather, "it applies only when an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute." *Id.* (emphasis in original). Time and again, courts have stressed that *ultra vires* review has "extremely limited scope." *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988); *see Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) (*Kyne* does not "authoriz[e] judicial review of any agency action that is alleged to have exceeded the agency's statutory authority"). The D.C. Circuit has described a *Kyne* exception as "essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009). Here, Plaintiff fails to meet this demanding standard.

To begin, for all the reasons that the Tucker Act precludes APA actions for claims that are in essence contractual, the Tucker Act also impliedly precludes a non-statutory equitable *ultra vires* action based on such claims. Plaintiff can seek relief from the Court of Federal Claims, which can adequately vindicate their asserted rights by awarding damages if they prevail. Plaintiffs also seek review under the APA in this case. Plainly, then, in Plaintiff's own view, the

*ultra vires* cause of action is not the only one available to them.  Further, *ultra vires* review is inappropriate because no federal statute has precluded all judicial review of the agency's conduct, *see e.g., FedEx v. Dep't of Comm.*, 39 F.4th 756, 764 (D.C. Cir. 2022), and Plaintiff has "an alternative review" for its claims, rendering them unable to prevail on either the first or second prongs of the *ultra vires* test.  *Id.*; *Nuclear Regul. Comm'n*, 605 U.S. at 682.

Although the availability of a statutory remedy is alone sufficient to defeat Plaintiff's *ultra vires* claim on the first two prongs, Plaintiff's claim also fails on the third prong, because Defendants have not violated any "clear and mandatory" statutory command.  Plaintiff merely alleges "[t]he Department's actions are plainly in excess of its delegated powers and are contrary to the clear and mandatory duties under Title VI, the [Higher Education Act of 1965], the associated regulations, and the [Notice Inviting Applications—Student Support Services Program, 89 Fed. Reg. 35,080 (May 1, 2024)]."  Compl. (ECF No. 1) ¶ 317; *see also* Pl.'s Mot. (ECF No. 2) at 45 (but Plaintiff only states "that Department acted ultra vires, in excess of its statutory authorities under the [Higher Education Act of 1965]"). This is insufficient to demonstrate an *ultra vires* claim.  Plaintiff fails to allege "that Defendants acted entirely in excess of their delegated powers and contrary to a specific prohibition in any [] statute," including the Higher Education Act of 1965.  *See Vera Inst. of Just.*, 2025 WL 1865160, at *17.  Accordingly, Plaintiff's *ultra vires* claim fails and should be dismissed.

### D.    Plaintiff's Request for A Writ of Mandamus under 28 U.S.C. § 1361 (Count VII) Fails.

Plaintiff presents its mandamus claim as a backstop to its APA claim.  *See* Compl. (ECF No. 1) ¶ 285 ("If the Court determines that [Plaintiff's] requested injunction is appropriate, it need not consider this mandamus claim").  But Plaintiff is mistaken because Plaintiff's claims under the Mandamus Act is not a cause of action that is meant to be sustained in the alternative.

To establish a court's jurisdiction over such a claim, a plaintiff seeking mandamus relief must show: (1) "a 'clear and indisputable right to relief,'" (2) "that the defendant has a '"clear duty to act,'" and (3) "that 'no adequate alternative remedy exists.'"  *CREW v. Trump*, 924 F.3d 602, 606 (D.C. Cir. 2019) (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)); *see also Lovitsky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020).    "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction."  *CREW*, 924 F.3d at 606.  And, even when these requirements are met, "a court may grant relief only when it finds compelling equitable grounds."  *Lovitsky*, 949 F.3d at 759. Mandamus jurisdiction "is strictly confined. . . mandamus is 'drastic'; it is available only in 'extraordinary situations'; it is hardly ever granted; those invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief.'"  *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc); *CREW*, 924 F.3d at 606 ("[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations.").  As discussed below, Plaintiff fails to establish these requirements.

For the reasons explained above, *see supra* at 7–26, Plaintiff does not have the clear and indisputable right to relief that is necessary to establish mandamus jurisdiction.  Nor can Plaintiff establish the requisite duty to act.  In the context of mandamus, the duty to be performed must be "ministerial and the obligation to act peremptory, and clearly defined."  *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) (quoting *United States ex rel. McLennan v. Wilbur*, 283 U.S. 414, 420 (1931)).  A ministerial duty "is one that admits of no discretion, so that the official in question has no authority to determine whether to perform the duty." *Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996).  Plainly, the Department's duties as to its oversight of its grantees are not merely "ministerial."  To the contrary, the Department's determination of

how best to administer appropriated funds to fulfill its legal mandates is classic discretionary agency action, *see supra* § I(B)(2).  Lastly, Plaintiff has ample adequate alternative remedies to bring their claims—*i.e.*, Plaintiff's challenges to the denial of their grant applications are contractual in nature, and therefore the Court of Federal Claims provides an adequate alternative under the Tucker Act, *see supra* § I(A)(3).

For all these reasons, Plaintiff's mandamus claim fails. [5]

## II.    Even if the Court Does Not Dismiss This Action, Plaintiff Is Not Entitled to a Preliminary Injunction.

Courts cannot grant requests for sweeping mandatory injunctive relief absent a strong showing that all elements of the preliminary injunction standard have been met, namely that Plaintiff demonstrates: (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) a balance of the equities in its favor; and (4) accord with the public interest.  Plaintiff fails to meet its burden and standing, a preliminary injunction is unwarranted, as explained below.

---

[5]    Lastly, although Plaintiff brings APA claims, the Court should excuse Defendants from filing a certified list of the contents of an administrative record and serving an administrative record simultaneously with this dispositive motion.  An administrative record is not necessary to resolve Defendants' motion, which argues, amongst other things, that this Court lacks jurisdiction and judicial review is not available in this case—which are threshold legal issues that do not require review of the administrative record. *See, e.g., Diakanua v. Rubio*, Civ. A. No. 24-1027 (TJK), 2025 WL 958271, at *11 n.10 (D.D.C. Mar. 31, 2025) ("[T]he Court will 'follow the general practice' and deny that motion because 'the administrative record is not necessary for the Court's decision.'" (citation modified; quoting *Arab v. Blinken*, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022))); *Sharifymoghaddam v. Blinken*, Civ. A. No. 23-1472, 2023 WL 8047007, at *3 (D.D.C. Nov. 17, 2023) ("In any case, courts in this District routinely allow agencies to waive compliance with Rule 7(n)(1) if 'the administrative record is not necessary for the court's decision.'" (quotation omitted)); *Connecticut v. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (Court waived Federal Defendants compliance with Local Civil Rule 7(n)); *Mdewakanton Sioux Indians of Minn. v. Zinke*, 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017) (same); *Carroll v. Office of Fed. Contract Compliance Programs, Dep't of Labor*, 235 F. Supp. 3d 79, 81 n.1 (D.D.C. 2017) (same); *PETA v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 94 n.2 (D.D.C. 2014) (same).

### A.    Plaintiff Is Not Likely to Prevail on the Merits of Their Claims.

Plaintiff is not likely to prevail on the merits of their claims. A plaintiff that cannot demonstrate a significant likelihood of success on the merits has no hope of obtaining a preliminary injunction. *See Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 182 n.2 (D.C. Cir. 2006); *Katz v. Georgetown Uni.*, 246 F.3d 685, 688 (D.C. Cir. 2001); *Apex, Inc. v. FDA*, 449 F.3d 1249, 1253–54 (D.C. Cir. 2006). "[A]bsent a 'substantial indication' of likelihood of success on the merits, 'there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.'" *Biovail Corp. v. FDA*, 448 F. Supp. 2d 154, (D.D.C. 2006) (quoting *American Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999)). As discussed in great length above, Plaintiff cannot establish that the Court has jurisdiction, let alone demonstrate that it will prevail on the merits. *Supra* at 7–28. Because Plaintiff it not likely to prevail in this matter the Court should deny Plaintiff's motion.

### B.    Plaintiff Cannot Establish Irreparable Harm.

Plaintiff is unable to demonstrate irreparable harm. The "standard for irreparable harm is particularly high in the D.C. Circuit." *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017). If a party makes no irreparable injury showing, a court may deny a motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674, 676 (D.C. Cir. 1985) (because movants could not establish irreparable harm, the court need not address any of the other factors). The injury "must be both certain and great; it must be actual and not theoretical [and] . . . of such imminence that there is a 'clear and present' need for equitable relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F. 3d 290, 297 (D.C. Cir. 2006) (citation omitted); *Doe v. Mattis*, 889 F.3d 745, 782 (D.C. Cir. 2018) (injury must be "certain," "great" and "actual"). "A movant's failure to show any irreparable harm is . . .grounds for refusing to issue a

preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches*, 454 F. 3d at 297 (D.C. Cir. 2006).

A movant must substantiate that the irreparable injury is "likely" to occur in the absence of relief. *See, e.g.*, *Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*, Civ. A. No. 15-1582 (APM), 2016 WL 420470, at *8 (D.D.C. Jan. 22, 2016) ("The movant bears the burden of substantiating, with evidence, that the injury is certain, imminent, great, and beyond remediation"). The vague allegations about *possible* future harms contained in Plaintiff's Complaint fall far short of showing the D.C. Circuit requires of an applicant for a preliminary injunctive relief. *See*, *e.g.*, *Chaplaincy of Full Gospel Churches*, 454 F. 3d at 297 (noting the Circuit's "high standard for irreparable injury"). "Bare allegations of what is likely to occur are of no value" because the district court must make the determination of "whether the harm will *in fact* occur." *Wis. Gas Co.*, 758 F.2d at 674 (emphasis in original).

While ordinary economic injuries are usually insufficient to require injunctive relief, financial harm can "constitute irreparable harm . . . where the loss threatens the very existence of the movant's business." *Wis. Gas Co.*, 758 F. 2d. at 674. The loss of grant funds during this litigation is not irreparable because the harm is speculative and otherwise compensable through monetary damages.

It is well-established that "economic loss does not, in and of itself, constitute irreparable harm." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (cleaned up). This Circuit has recognized only one exception, for pecuniary loss that "threatens the very existence of the movant's business." *Wis. Gas Co.*, 758 F.2d at 674. This exception generally applies when government action threatens the existence of an independent private entity. *See, e.g., Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1329 (D.C. Cir. 2024) (finding

irreparable harm when a financial services firm would be forced to shutter if regulatory action took effect during litigation). Here, neither the Plaintiff nor its three identified members, Green River, Big Bend, and SIU-Carbondale, fall within this exception. As previously stated, Plaintiff has multiple streams of potential income and thus is not irreparably harmed. *See supra,* §I(A)(2)(b) at 15. Green River College, actually received a new award under their SSS Science, Technology, Engineering, and Mathematics (STEM) application. *See* McCaghren Decl. ¶ 15. Big Bend still has a counseling Center, Career Services Department, a Basic Adult Education Center for learning the English language and GED classes, as well as Advising Services. *See* https://bigbend.edu/student-center/student-services.html (last accessed on Nov. 10, 2025). SIU-Carbondale also maintains many student resources such as: Tech help, a writing center, library, Research Support Services, military and Veterans Resources and a Tutoring Center. *See* https://tutoring.siu.edu/ (last accessed on Nov. 10, 2025); https://tutoring.siu.edu/services/index.php (last accessed on Nov. 10, 2025). Although there may be some harm, it is not irreparable. Plaintiff has not shown or even alleged that the harm to either themselves or their members "threatens the very existence of their business. *Wis. Gas Co.*, 758 F.2d at 674.

Moreover, the passage of time between the Defendants' denial letters sent in July and Plaintiff's request for a preliminary injunction on September 30, 2025, further undermines any showing of irreparable injury. *AARP v. U.S. Equal Employment Opportunity Comm'n*, 226 F. Supp 3d 7, 22 (D.D. C 2016) (An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm.). Additionally, Plaintiff claims that the Non-selected SSS Programs reputations will be damaged (Pl.'s Mot. (ECF No. 2) at 39) but any adverse effect on a grantee's reputation is speculative and

redressed through monetary compensation and does not qualify as irreparable harm. *See Guttenburg v. Emery*, 26 F. Supp. 3d 88, 103 (D.D.C. 2014). Lastly, the chickens have already flown the coup, and the issue is moot because all the funding for the award of new grants for FY 2025 has been dispersed. $1,190,999,999.08 of the $1,191,000,000 recommended appropriation for the Federal TRIO programs was obligated during FY 2025. McCaghren Decl. ¶ 7. The remaining balance of $0.92 available to the Federal TRIO programs for FY 2025 lapsed on September 30, 2025. *Id.* No funds remain available from the FY 2025 appropriation for the Federal TRIO programs. *Id.* ¶¶ 7, 8.

### C. The Equities and Public Interest Weigh Against Relief.

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. These factors tilt decisively against granting a preliminary injunction here. *See Kim v. FINRA*, 698 F. Supp. 3d 147, 172 (D.D.C. 2023) ("[A] court can deny preliminary injunctive relief solely on the balance of equities and public interest factors even in cases, like this, involving constitutional claims."), *appeal dismissed*, No. 23-7136, 2025 WL 313965 (D.C. Cir. Jan. 27, 2025). Plaintiff does not seek to preserve the status quo but instead wants to alter or interfere with the Department's authority to administer its grant programs and also the public interest tips against issuance of an injunction because Plaintiff has not met at least the first two prongs for injunctive relief.

Plaintiff is wrong that the Department will suffer no harm. *See* Pl.'s Mot. (ECF No. 2) at 40–41. The Supreme Court's decision in *National Institutes of Health* and *California* underscores why the remaining injunction factors tip in Defendants' favor. As those decisions noted, the harm Defendants would face if the Court were to order reinstate the grant award contracts pending final resolution of the case—which is what Plaintiff effectively demands—would be irreparable given

that the funds released to a plaintiff "'cannot be recouped' and are thus 'irrevocably expended,'" *National Institutes of Health v. American Public Health Association* ("*APHA*"), 145 S. Ct. 2658 (2025) (per curiam) (quoting *Phillip Morris USA Inc. v. Scott*, 56 U.S. 1301, 1304 (2010), or given that Defendants would be "unlikely to recover the grant funds once they are disbursed." *California*, 604 U.S. at 651–52.

In *APHA*, the Court found irreparable harm to the government from the release of grant funds to plaintiffs, who did "not state they will repay grant money if the Government ultimately prevails," and who contended that they lacked the resources to continue to fund their project without the funds as this was "inconsistent with the proposition that they have the resources to make the Government whole for money already spent." *Id*. The same is true here. Plaintiff has not stated that it will repay the Government for the expended funds should the Government prevail. In fact, Plaintiff affirmatively asks the Court to order no bond. Pl.'s Mot. (ECF No. 2) at 41. And, as in *APHA* Plaintiff claims it and its members cannot continue with their programs without the funding, which is inconsistent with the notion that it will repay the Government for any expended funds. *See* Pl.'s Mot. (ECF No. 2) at 36–41. As such, should the Government prevail, any funds released to Plaintiff would be "irrevocably expended." *APHA*, 145 S. Ct. at 2658.

Also, equity weighs against granting injunctive relief because as discussed above $1,190,999,999.08 of the $1,191,000,000 recommended appropriation for the Federal TRIO programs was obligated during FY 2025 and the remaining balance of $0.92 available to the Federal TRIO programs for FY 2025 lapsed on September 30, 2025. *See* McCaghren Decl. ¶ 7. Plaintiff, however, quizzically seeks unfettered access to any remaining funding (which none exists) and seeks to hamstring the Government from lawfully effectuating policy decisions with respect to funding and agency priorities. *See, e.g.*, Pl.'s Proposed Order (ECF No. 2-10) at 2

(Plaintiff requests that the Court order "any unobligated fiscal year 2025 funds remaining from the $3,080,952,000 that Congress appropriated to the Department's Higher Education budget account as part of the Full-Year Continuing Appropriations and Extensions Act are not to be spent, obligated, or otherwise made unavailable during the pendency of this lawsuit, and such funds will not be considered lapsed as of October 1, 2025.").  As previously stated, there are no unobligated fiscal year 2025 funds.

Furthermore, the scope of injunctive relief that the Court may even consider is severely curtailed by separation of powers principles.  Even where jurisdiction is proper, a court cannot "specifically order" the federal government "to continue to contract" with specific parties, as such relief would undermine the "Executive discretion" that "both the Constitution and Congress's laws have traditionally afforded" with respect to "how to spend" appropriated funds "within the constraints set by Congress."  *Aids Vaccine Advoc. Coal. v. Dep't of State*, 770 F. Supp. 3d 121, 154 (D.D.C.), *vacated and remanded sub nom. Glob. Health Council v. Trump*, 153 F.4th 1 (D.C. Cir. 2025).   Accordingly, because Defendants have obligated all appropriated funds for the FY 2025 and the remaining balance of $0.92 available to the Federal TRIO programs for FY 2025 lapsed on September 30, 2025, and any such injunction cannot restore what is not there.

Moreover, the public also has an interest in the judiciary respecting the Executive Branch's ability to lawfully direct and guide agencies' spending decisions, and, in particular, ensuring that tax dollars are allocated to grant programs that most effectively advance the priorities of the Department.  Also, there is no public interest in compelling federal agencies to make discretionary funding decisions.  *See Am. Ass'n of Univ. Professors v. Dep't of Just.*, Civ. A. No. 25-2429, 2025 WL 1684817, at *14 (S.D.N.Y. June 16, 2025) (rejecting the plaintiffs' arguments regarding the

public interest and equities because the court should not "direct the policies of the [Government] first and ask questions later").

Accordingly, on these facts, the balance of the equities and the public interest militate against the entry of relief.

### D.    Any Relief Should Be Limited in Scope and Narrowly Tailored

Although the Court should deny Plaintiff's motion for the reasons discussed above, to the extent the Court decides to grant injunctive relief, it is well settled that such relief "must be narrowly tailored to remedy the specific harm shown," *Neb. Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (citation omitted), and "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). Additionally, "'preliminary relief may never be granted that addresses matters 'which in no circumstances can be dealt with in any final injunction that may be entered.'" *In re Microsoft Corp. Antitrust Litig*, 333 F.3d 517, 525 (4th Cir. 2003) (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945).

In light of these principles, the scope of equitable relief available here should be constrained by what would be available to Plaintiff at final judgment under the APA. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (preliminary relief must be "of the same nature as that to be finally granted."). Relief under the APA is limited; courts may "hold unlawful and set aside agency action." 5 U.S.C. § 706; *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66–67 (2004) (explaining how the APA's limits on relief are intended to "protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements"). The APA generally prohibits "specific relief," in the sense that, "when a court reviewing agency action determines that an

agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) (citations omitted); *see also Palisades Gen. Hosp. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). As such, if the Court is inclined to grant Plaintiff's motion, it must do so consistent with the APA and Plaintiff's requested relief exceeds these bounds. If granted, Plaintiff's relief would essentially bind the Department without limitation, restricting the Department's ability to assess use the appropriated funds as it deems necessary and prevents any future actions to protect the public fisc or to ensure the expenditure of funds is in the best interests of the United States. Accordingly, any relief should be narrow and must account for the Department's priorities and use the appropriated funds within the bounds of its authority.

Moreover, if the Court decides to grant injunctive relief, Defendants respectfully request that the Court stay any such order to allow the Government time to seek reconsideration or authorization to seek appellate review from the Solicitor General, as appropriate. *See* Fed. R. App. P. 8(a). For the reasons explained above, Defendants have, at a minimum, satisfied the requirements for a stay of any injunction pending appeal. *See Nken*, 556 U.S. at 434 (describing the standard for obtaining such a stay and noting the "substantial overlap" between that standard and "the factors governing preliminary injunctions").

### E.    The Court Should Order Plaintiff to Post Bond Pursuant to Rule 65(c).

If the Court enters a temporary restraining order or preliminary injunction the Court should require Plaintiff to post an appropriate bond commensurate with the scope of any such temporary order. Federal Rule of Civil Procedure 65(c) states, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). This Rule provides "broad discretion

in the district court to determine the appropriate amount of an injunction bond." *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999).

Plaintiff requests that "any unobligated fiscal year 2025 funds remaining from the $3,080,952,000 that Congress appropriated to the Department's Higher Education budget account as part of the Full-Year Continuing Appropriations and Extensions Act are not to be spent, obligated, or otherwise made unavailable during the pendency of this lawsuit, and such funds will not be considered lapsed as of October 1, 2025." Pl.'s Mot. (ECF No. 2-10) at 2. In accordance with both Rule 65(c) and the President's March 11, 2025, Memorandum titled "Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)," *see* https://www.whitehouse.gov/presidentialactions/2025/03/ensuringthe-enforcement-of-federal rule-of-civil-procedure-65c/, Defendants respectfully request that the Court order Plaintiff to post a bond for $ 1,317,628, which is the amount that the three named SSS new award applicants had applied to receive. At bottom, this case ultimately involves monetary relief, and thus, the requirements of Rule 65(c) to post security are plainly at play.

*    *    *

**CONCLUSION**

For these reasons, the Court should deny Plaintiff's motion for a preliminary injunction and dismiss Plaintiff's complaint.

Dated: November 10, 2025                          Respectfully submitted,

                                                  JEANINE FERRIS PIRRO
                                                  United States Attorney

                                                  By: _____ */s/ Heather Graham-Oliver* _____
                                                      HEATHER GRAHAM-OLIVER
                                                      STEPHANIE R. JOHNSON,
                                                      D.C. Bar # 1632338
                                                      Assistant United States Attorneys
                                                      Civil Division
                                                      601 D Street, NW
                                                      Washington, DC 20530
                                                      Telephone: (202) 252-2520
                                                      Email: heather.graham-oliver@usdoj.gov


                                                  *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COUNCIL FOR OPPORTUNITY
IN EDUCATION,

        Plaintiff,

    v.

U.S. DEPARTMENT OF EDUCATION, et al.,

        Defendants.

Civil Action No. 25-3491 (TSC)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's motion for a preliminary injunction, Defendants' motion to dismiss, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED,

ORDERED that Defendants' motion is GRANTED, and it is further

ORDERED that this action is DISMISSED.

SO ORDERED:

_____
Date

_____
TANYA S. CHUTKAN
United States District Judge