**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

COUNCIL FOR OPPORTUNITY IN
EDUCATION

        Plaintiff,

       v.

U.S. DEPARTMENT OF EDUCATION, *et al.*,

        Defendants.

Civil Action No. 25-cv-03491 (TSC)
Civil Action No. 25-cv-03514 (TSC)
(Consolidated Cases)

---

**MEMORANDUM OPINION**

These consolidated cases deal with Department of Education's decisions to deny certain Council for Opportunity in Education's ("COE") members' applications for new Student Support Services ("SSS") grants, Case No. 25-cv-3491 ("SSS Case"), and discontinue other members' TRIO grant funding, Case No. 25-cv-3514 ("TRIO Case"), all allegedly on the grounds that the proposed or funded activities conflicted with the Administration's anti-DEI policies and interpretations of federal civil rights law. On September 30, 2025, COE filed two separate lawsuits against the Department of Education and Secretary McMahon, asserting violations of the Administrative Procedure Act ("APA"), constitutional violations, as well as ultra vires and mandamus claims. SSS Case Compl., ECF No. 1; TRIO Case Compl., ECF No. 1. The court issued a preliminary injunction in January 2026. *See* SSS Case Mem. Op. at 39, ECF No. 28. Pending before the court are Defendants' motions to dismiss each case, SSS Case Mot. to Dismiss ("Def.'s Mot."), ECF No. 15; TRIO Case Mot. to Dismiss ("Def.'s Mot."), ECF No. 14, COE's motion to modify the scope of the court's preliminary injunction, SSS Case Mot. to Modify Ord.

("Pl.'s Mot. to Modify"), ECF No. 33, and COE's motion to file declarations in support of its modification motion under seal, SSS Case Mot. for Leave to File Under Seal ("Pl.'s Seal Mot."), ECF No. 32.

For the reasons below, Defendants' Motions to Dismiss are GRANTED in part and DENIED in part, COE's Motion for Leave to File Under Seal is GRANTED, and the unresolved portion of COE's Motion to Modify the Preliminary Injunction Order is DENIED.

## I.    BACKGROUND

### A.  Factual Background[1]

Beginning in the 1960s, Congress established a series of education grant programs to combat barriers to post-secondary education faced by students from disadvantaged backgrounds. *See* 20 U.S.C. § 1070a-11(a).  These programs, commonly referred to as federal TRIO programs, are administered by the Department of Education and subject to program-specific regulations, 34 C.F.R. pts. 642–47, as well as various statutory mandates under the Higher Education Act of 1965, 20 U.S.C. §§ 1070a-11–1070a-18, the General Education Provisions Act, 20 U.S.C. § 1221(b)(1), (c)(1), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.  TRIO grants are selected through a peer-review process for project durations of two or five years, 20 U.S.C. § 1070a-11(b)(2), (c), but only receive funding for an initial twelve-month budget period, 34 C.F.R. §§ 75.251(a), 75.253(a).  Thereafter, the Department continues funding in twelve-month increments so long as the grantee maintains eligibility, submits the requisite reports, meets certain performance criteria, and satisfies the Department that continuation "is in the best interest of the Federal Government."  *Id.* § 75.253(a).

---

[1] A more fulsome factual and statutory background is set forth in the court's Memorandum Opinion granting preliminary injunctive relief.  *See* SSS Case Mem. Op. at 2–8.

Defendants solicited new applications for FY 2025 SSS grants in spring 2024.[2] *See Applications for New Awards; Student Support Services Program*, 89 Fed. Reg. 35,080 (May 1, 2024). In July 2025, Defendants sent out virtually identical denial letters to certain COE members, informing them that their programs had "not been selected based on the Department's review for potential conflicts with applicable nondiscrimination requirements." SSS Case Compl. ¶¶ 157, 158. Specifically, the letters stated that "staff" had reviewed their applications and "identified information indicating that the proposed activities take account of race in ways that conflict with the Department's policy of prioritizing merit, fairness, and excellence in education and the Department's commitment to upholding the letter and purpose of Federal civil rights law." *Id*. ¶ 159. Such applications were "therefore inconsistent with applicable nondiscrimination statutes, regulations, policies, and other requirements applicable to the program. 34 C.F.R. § 75.500; *see also* 2 C.F.R. § 200.211(c)." *Id.*

In summer 2025, Defendants also issued notices of grant non-continuation to various other COE members who had received grant awards between 2021-2024 and otherwise remained in compliance with all applicable requirements. TRIO Case Compl. ¶¶ 116, 119–23, 139. Using virtually identical language, Defendants' notices of non-continuation stated:

> The Department has undertaken a review of grants and determined that the grant specified above provides funding for programs that reflect the prior Administration's priorities and policy preferences and conflict with those of the current Administration, in that the programs: violate the letter or purpose of Federal civil rights law; conflict with the Department's policy of prioritizing merit, fairness, and excellence in education; undermine the well-being of the students these programs are intended to help; or constitute an inappropriate use of federal funds.

---

[2] Student Support Services ("SSS") grants are a specific type of grant within the TRIO grant program.

*Id.* ¶¶ 143, 145.  In light of those determinations, Defendants concluded that continuation of these members' programs was "inconsistent with, and no longer effectuates, the best interest of the Federal Government."  *Id.* ¶ 145.

### B.  Procedural History

On September 30, 2025, COE filed two separate lawsuits against the Department of Education and Secretary McMahon challenging these funding determinations and seeking declaratory, injunctive, and mandamus relief.  SSS Case Compl.; TRIO Case Compl.  In the first action, COE brings claims under the APA, an ultra vires claim, and, in the alternative, requests a writ of mandamus.  SSS Case Compl. ¶¶ 252–324.  In the second, COE asserts similar claims under the APA, an ultra vires claim, requests a writ of mandamus, and adds several claims alleging constitutional violations under the Fifth Amendment, separation of powers and the non-delegation doctrine, as well as the Take Care Clause.  TRIO Case Compl. ¶¶ 206–85.  COE also moved for preliminary injunctions in both cases.  SSS Case Mot. for Prelim. Inj., ECF No. 2; TRIO Case Mot. for Prelim. Inj., ECF No. 2.  In response, Defendants filed combined motions to dismiss and oppositions to COE's preliminary injunction motions.  SSS Case Def.'s Mot. at 1; TRIO Case Def.'s Mot. at 1.

The court consolidated the actions at a hearing on December 15, 2025.  *See* SSS Case Min. Entry (Dec. 15, 2025).  On January 16, 2026, the court granted COE's motions for preliminary injunctions, thereby vacating the Department's grant denial and discontinuation decisions with regard to the members that COE identified and ordering reconsideration in accordance with applicable laws and regulations.  *See* SSS Case Ord. at 1–3, ECF No. 29.  In its Order, the court also granted COE leave to file a motion to modify the scope of the court's preliminary injunction and, if COE did so, instructed it to attach documentation regarding any additional members' harm.

*Id.* at 3. COE has done so, submitting declarations from 46 additional members, while also requesting the court extend the scope of the preliminary injunction to cover 33 unidentified members who did not submit declarations. *See* SSS Case Pl.'s Mot. to Modify at 4. COE also seeks leave to file unredacted versions of the attached declarations—which detail the individual members' harms—under seal. *See* SSS Case Pl.'s Seal Mot. Defendants oppose COE's motion to seal as well as its request to extend the scope of the court's preliminary injunction, but only to the extent it seeks to include members beyond the 46 it identified. *See* SSS Case Defs.' Opp'n to Pl.'s Mots. at 1, 10–12 ("Defs.' Opp'n"), ECF No. 35. Given the partial nature of Defendants' opposition to the motion to modify, the court directed the parties to submit a joint proposed order to extend preliminary relief to those 46 members, which the court adopted on April 13, 2026. *See* SSS Case Modification Ord. at 1, ECF No. 41.

## II.     ANALYSIS

### A.  Motion to Dismiss

Defendants move to dismiss both of COE's actions under Rule 12(b)(1) and Rule 12(b)(6). *See* SSS Case Defs.' Mot. at 7–28; TRIO Case Defs.' Mot. at 9–38. In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), "the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." *Jones v. United States*, 949 F. Supp. 2d 50, 52 (D.D.C. 2013). If the plaintiff is unable to do so, the court must dismiss the action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss for failure to state a claim, the court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable

inferences from those allegations in the plaintiff's favor." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

At the outset, for the reasons articulated in its Memorandum Opinion granting COE's motions for preliminary injunctions, the court rejects Defendants' assertions that COE lacks standing to bring either action, SSS Case Defs.' Mot. at 9–15; TRIO Case Defs.' Mot. at 11–16, that this court's jurisdiction is precluded by the Tucker Act, SSS Case Defs.' Mot. at 15–19; TRIO Case Defs.' Mot. at 16–23, and that COE's APA claims are unreviewable under the statute, SSS Case Defs.' Mot. at 19–22; TRIO Case Defs.' Mot. at 23–27. *See* SSS Case Mem. Op. at 9–22. As a result, the only remaining arguments are Defendants' challenges to COE's constitutional claims, ultra vires claims, and mandamus claims, SSS Case Defs.' Mot. at 23–28; TRIO Case Defs.' Mot. at 27–37. The court will take each argument in turn.

Turning first to the ultra vires and mandamus claims, the court will grant Defendants' motion to dismiss. It is well established that ultra vires review is only available where "there is no alternative procedure for review of the statutory claim." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022) (internal quotations and citation omitted). Similarly, a plaintiff seeking mandamus relief must show "that 'no adequate alternative remedy exists.'" *CREW v. Trump*, 924 F.3d 602, 606 (D.C. Cir. 2019) (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)). COE's ultra vires claims are based on the same allegations that undergird its APA claims—that Defendants acted in excess of and contrary to their statutory duties in denying and discontinuing the affected COE members' grant funding. SSS Case Compl. ¶¶ 315–19; TRIO Case Compl. ¶¶ 278–80. The same is true of its mandamus claims, which COE presents as an alternative theory for the same relief it requests under the APA. *See* SSS Case Compl. ¶¶ 320–324; TRIO Case Compl. ¶¶ 281–85. As the court has already determined, however, the APA

6

provides both an avenue for review of COE's claims as well as the remedies it seeks.  Thus, COE's ultra vires and mandamus claims fail.  *See Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 311–12 (D.D.C. 2017) (dismissing mandamus claim "because plaintiffs are able to assert the same claim through the APA"); *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 201 (D.D.C. 2024) ("[I]f a plaintiff advances both a well-pleaded APA claim and a duplicative *ultra vires* claim, the *ultra vires* claim must be dismissed.").

As to the constitutional claims, COE presses numerous theories.  In the TRIO Case, COE brings standalone constitutional challenges under the Fifth Amendment's void-for-vagueness doctrine,[3] separation of powers and the non-delegation doctrine, and the Take Care Clause.  *See* TRIO Case Compl. ¶¶ 247–254, 255–65, 266–77.  But the Supreme Court's decision in *Dalton v. Specter* precludes standalone constitutional challenges that merely repackage statutory claims, holding that "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review."  511 U.S. 462, 473 (1994); *see also Glob. Health Council v. Trump*, 153 F.4th 1, 14–17 (D.C. Cir. 2025) (amended) (concluding that plaintiffs could not pursue their separation of powers claim because the "alleged statutory violations" were "the predicate acts for the constitutional claims" and "statutory claims c[ould not] be transformed into constitutional ones").  COE has failed to meaningfully address Defendants' assertion that its constitutional claims are "purely statutory."  TRIO Case Defs.' Mot. at 27; TRIO Case Pl.'s Opp'n to Defs.' Mot. to Dismiss at 33–37 ("Pl.'s Opp'n"), ECF No. 18.  The court will therefore treat this argument as conceded, and COE's remaining standalone constitutional claims in the TRIO case will be dismissed.

---

[3] COE voluntarily withdrew this claim at the court's hearing on its preliminary injunction motions. *See* SSS Case Dec. 15, 2025 Hr'g Tr. at 45 ("Hr'g Tr."), ECF No. 24.

In the SSS case, by contrast, COE brings its constitutional claims under the APA, *see* 5 U.S.C. § 706(2)(B), asserting that Defendants violated the Take Care and Spending Clauses by failing to "obligate[] and expend[] $1.19 billion towards all TRIO programs," and not "obligat[ing] and expend[ing] the funds allocated to the SSS program in the manner required under law."  SSS Case Compl. ¶ 308.  Defendants do not suggest that these claims are precluded under *Dalton*, *see* SSS Case Hr'g Tr. at 34, but rather argue that the earmarked funds *have* been obligated and that the Take Care Clause provides no basis to review the actions of "subordinate Executive Branch officials," just the President's.  SSS Case Defs.' Mot. at 23–24.  It is well established, however, that the court must take all well-pleaded factual allegations as true at the motion to dismiss stage. *See Iqbal*, 556 U.S. at 679.  Thus, Defendant's counterfactual is insufficient grounds to dismiss COE's constitutional APA claim.

As for their challenge to COE's Take Care Clause argument, Defendants' cited authorities do not support their assertion that such a claim cannot be leveled against agency actions, *see* SSS Case Defs.' Mot. at 24 (collecting cases), and the court is not aware of any binding precedent suggesting as much.  *Cf. Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 367 (2025) ("The Constitution charges the Executive Branch with enforcing federal law.").  Indeed, in just the past year, numerous courts in this district have analyzed Take Care Clause claims challenging purportedly unlawful agency actions, and none have rejected them on the ground that Defendants now proffer.  *See, e.g., Widakuswara v. Lake*, 779 F. Supp. 3d 10, 36 (D.D.C. 2025); *Vera Inst. of Just. v. U.S. Dep't of Just.*, 805 F. Supp. 3d 12, 35–37 (D.D.C. 2025); *Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*, 786 F. Supp. 3d 13, 32 (D.D.C. 2025).  Because Defendants' arguments in favor of dismissal are unpersuasive, the court will deny their motion to dismiss COE's constitutional APA claims in the SSS case.

### B. Motion to File Under Seal

There is a "strong presumption in favor of public access to judicial proceedings." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (internal quotations and citation omitted). This presumption is even greater where the Government is a party. *See Hyatt v. Lee*, 251 F. Supp. 3d 181, 184 (D.D.C. 2017). Nonetheless, the "presumption may be outweighed by competing interests." *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1127 (D.C. Cir. 2020). Thus, in determining whether to seal records, courts weigh "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *Id.* (internal quotations and citation omitted); *see also United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980).

COE seeks to seal the names of the member institutions, the declarants' names,[4] their Unique Entity Identifier numbers, and the PR/Award numbers of the 46 newly identified members on the public docket. SSS Case Pl.'s Seal Mot. at 7. According to COE, "all six factors weigh in favor of COE's limited sealing request." *Id.* at 6. The court largely agrees.

For one, the "need for public access" factor weighs in favor of sealing since COE has filed redacted versions of the documents on the public docket that disclose the substance of the declarations and merely obscure members' identifying information, *see* SSS Case Mot. to Modify, Exs. 1–52, ECF Nos. 33-1–33-52, which, as explained below, is immaterial to resolving COE's

---

[4] Defendants do not challenge COE's request as it relates to the declarants' names. *See* SSS Case Defs.' Opp'n at 1 n.2.

modification motion. *See Doe v. McHenry*, No. 25-cv-286, 2025 WL 596650, at *2 (D.D.C. Jan. 31, 2025) (determining this factor weighed slightly in favor of sealing where plaintiff filed redacted versions removing identifying information, and redacted information was not "critical in aiding the public's understanding of the allegations made"). These redacted versions therefore alleviate any concerns regarding "the public's ability to understand the issues in the case." *Ohana v. Acad. Express, LLC*, No. 18-cv-2127, 2022 WL 2952400, at *22 (D.D.C. July 26, 2022); *see also Factor2 Multimedia Sys. v. TikTok*, No. 24-cv-133, 2025 WL 1713257, at *6 (D.D.C. June 18, 2025) (granting motion to seal where the "sealing request is narrowly tailored 'to afford the public the greatest scope of access'").

The second factor similarly counsels in favor of sealing. In assessing this factor, the court "should consider the public's previous access to the sealed information, not its previous access to the information available in the overall lawsuit." *CNN v. FBI*, 984 F.3d 114, 119 (D.C. Cir. 2021). COE points out that "[t]he public has not had previous access to the additional programs' identities and their status as COE members." SSS Case Pl.'s Seal Mot. at 7. And although Defendants suggest that "grant information and decisions, such as the information at issue here, are publicly available including reasoning and the names of the schools," SSS Case Defs.' Opp'n at 6, they do not point to any source outside of the Department of Education's TRIO grant homepage that purportedly discloses the redacted information at issue, *see id.* (citing https://www.ed.gov/grants-and-programs/grants-higher-education/trio-home-page). Defendants also suggest that "at least one of the institutions requesting that their information be sealed has publicly admitted the fact they are supporting Plaintiff's in this action," and one member "has publicly acknowledged their membership with COE." *Id.* Because Defendants' memorandum redacts these portions of its text, *see id.* at 6–7, however, the court cannot itself substantiate nor credit Defendants' claims.

"The third, fourth, and fifth *Hubbard* factors are interrelated, and require courts to look at the strength of the property and privacy interests involved, and to take into account whether anyone has objected to public disclosure and the possibility of prejudice to that person." *Upshaw v. United States*, 754 F. Supp. 2d 24, 29 (D.D.C. 2010).  COE's President avers that "[m]any of these additional members have informed COE that they wish for their identity and status as COE members to remain confidential because they are concerned about negative public attention and potential repercussions to their institutions and organizations if they are publicly revealed as having supported COE's efforts to seek and obtain relief from the Department."  SSS Case Jones Decl. ¶ 10, ECF No. 33-1; *EEOC v. Nat'l Child.'s Ctr.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996) (determining that this factor favored sealing a court document when one party objected to disclosure of the information); *Hubbard,* 650 F.2d at 319 ("[W]here a third party's property and privacy rights are at issue the need for minimizing intrusion is especially great.").

Moreover, the court agrees with Plaintiff that "COE's additional members have legitimate privacy interests in keeping their identities and status as COE members private."  SSS Case Pl.'s Mot. to Seal at 8.  Indeed, courts have long recognized individuals' privacy interests regarding their membership status in an association.  *See NAACP v. Alabama*, 357 U.S. 449, 462 (1958) ("This Court has recognized the vital relationship between freedom to associate and privacy in one's associations."); *see also Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021)*.*  Given this privacy interest, disclosure of the redacted information would certainly prejudice COE's declarants and respective member institutions.

Defendants counter that granting the motion to seal would prevent them from disclosing updates regarding "the progress and outcomes of this litigation as to these specific grants."  SSS Case Defs.' Opp'n at 9.  But Defendants have not explained why they need to identify COE

members by name to do so in either their Opposition or their notice of Congress' recent reporting requirement, *see id.*; SSS Case Defs.' Notice of Suppl. Auth. at 1–2, ECF No. 38. And, as COE points out, "[s]ealing these members' identities would not prevent the Department from disclosing their names and the status of their grants to other branches of the federal government and federal agencies as needed for purposes of administering the TRIO programs." SSS Case Pl.'s Consol. Reply at 7, ECF No. 36. Indeed, Defendants' concerns regarding their congressional mandate have already been alleviated through the joint proposed order that the court adopted. *See* SSS Case Modification Ord. at 3 ("[T]o the extent that Defendants must identify Plaintiff's additional identified members, such required Congressional notification will not violate any order of this Court pertaining to the sealing of the identities of Plaintiff's additional members, or otherwise the members that are the subject of Plaintiff's motion to seal.").

Regarding the sixth factor—the purposes for which the documents were introduced—this factor weighs in COE's favor as well. As instructed, COE supplemented its motion to modify the scope of the preliminary injunction with declarations from additional members that detail the harms they have experienced from Defendants' denial or discontinuation of their grants. As noted above, those harms are publicly available on the docket. *See* SSS Case Mot. to Modify, Exs. 1–52. COE seeks to redact only certain portions of information that directly or indirectly attribute such harms to the member institutions. Yet, neither the court nor the public require knowledge of the members' identities to analyze the merits of COE's request. It is sufficient that these institutions exist and face the averred harms. *See Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F.4th 586, 594 (D.C. Cir. 2022) (rejecting the government's contention that the plaintiff association needed to identify affected members by name for standing purposes where it submitted their survey responses regarding their injuries with direct quotations).

12

The court's prior directive that COE supplement its motion relates solely to the court's need to assure itself that any relief is "'carefully circumscribed and tailored to remedy the harm shown' by the facts." *N. Am.'s Bldg. Trades Unions v. Dep't of Def.*, 783 F. Supp. 3d 290, 301 (D.D.C. 2025) (citation omitted).  And Defendants did not oppose COE's motion to the extent it sought to include the declarants' institutions in the scope of the court's preliminary injunction.  SSS Case Defs.' Opp'n at 10–12.  Accordingly, the court already granted the modification request with regard to these members, SSS Case Modification Ord. at 1, thereby fulfilling the purpose for introduction.

In sum, the above factors favor COE's request to seal its members' unredacted declarations. The court will therefore grant COE's motion to file under seal.

### C.  Motion to Modify the Scope of the Preliminary Injunction

As articulated above, the court has already granted COE's motion to modify the scope of the court's preliminary injunction in extending coverage to COE's 46 addition members that submitted documentation of their injuries.  *See id.* at 1.  Thus, the only remaining issue for resolution is whether COE is entitled to preliminary relief for 33 other members for which the court lacks any direct evidence of harm.  For the reasons stated below and in the court's Memorandum Opinion granting COE's initial motion for a preliminary injunction, *see* SSS Case Mem. Op. at 37–38, the court concludes that it is not.

It is well established that a party seeking a preliminary injunction bears the burden of substantiating, with evidence, that the claimed injury is certain, imminent, great, and beyond remediation, *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), and any injunction "must be narrowly tailored to remedy the specific harm shown," *Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (cleaned up).  That an organization proceeds on a theory of associational standing, which does not require individual

13

participation, does not alter these requirements because the standing inquiry is distinct, albeit related, from that of fashioning any preliminary relief. *See, e.g., Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995) (concluding that the plaintiff "adequately pled facts supporting its standing to bring suit" before noting that "to establish the grounds for a preliminary injunction [the plaintiff] must show more," including "demonstrat[ing] . . . an irreparable injury that the proposed injunction would avert"), *amended on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995).

While the court credits COE's observation that the additional 46 declarations provide greater insight into the scope of Defendants' conduct and COE's members' alleged injuries, SSS Case Pl.'s Mot. to Modify at 7–8, and recognizes that it retains authority to grant broad relief under the APA, *see Trump v. CASA*, 606 U.S. 831, 847 n.10 (2025) (declining to address "the distinct question [of] whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action"), the issue with extending the preliminary injunction to these unnamed members is not one of numbers but of the nature of the claimed harm.

In particular, COE largely based its preliminary injunction request on injuries derived from the denial or discontinuation of its members' federal grant funding. *See* SSS Case Mem. Op. at 32–36. Yet, recoverable monetary harms are generally not irreparable. *See Wis. Gas*, 758 F.2d at 674. Critically, however, COE's members submitted declarations detailing their shuttering programs, employee layoffs, and cuts to student services, all due to their substantial reliance on federal funding. SSS Case Mem. Op. at 34–35. And, when taken with the additional harms that COE identified, that is enough to show that "there is a clear and present need for equitable relief to prevent" the claimed harm. *Wis. Gas*, 758 F.2d at 674 (cleaned up). But the mere fact that Defendants allegedly denied or discontinued any number of COE members' funding is not, without more, sufficient grounds for preliminary relief. *See Glob. Health Council*, 153 F.4th at 21 ("[I]f

the later opportunity to compete for additional grants could fix the harm, it would not be irreparable.").

And without evidence that those funding cuts adversely affect a given members' ability to continue its program, employ its staff, provide student services, or similar results, it cannot be said that the economic injuries are "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Wis. Gas*, 758 F.2d at 674 (cleaned up); *see also* 5 U.S.C. § 705 (permitting preliminary relief under the APA "to the extent necessary to prevent irreparable injury"). Accordingly, the court cannot conclude, at this stage of litigation, that extending relief to those members would satisfy its obligation to "narrowly tailor[]" the preliminary injunction to only the specific harm shown. *Neb. Dep't of Health & Human Servs.*, 435 F.3d at 330. Thus, COE's motion to modify the preliminary injunction will be denied to the extent it seeks to extend the scope of preliminary relief to members who have not submitted any evidence of harm.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are granted in part and denied in part, COE's Motion for Leave to File Under Seal is granted, and the unresolved portion of COE's Motion to Modify the Preliminary Injunction Order is denied. A separate order will follow.

Date: May 27, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

15