**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **COUNCIL FOR OPPORTUNITY IN EDUCATION,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:25-cv-3491-TSC |
| v. | ) | Case No. 1:25-cv-3514-TSC |
| | ) | |
| **U.S. DEPARTMENT OF EDUCATION,** *et al.*, | ) | **REDACTED**[1] |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSED RENEWED MOTION TO ENFORCE PRELIMINARY INJUNCTION**

Plaintiff Council for Opportunity in Education ("COE") renews its June 9, 2026 Motion to Enforce the Preliminary Injunction. *See* Docs. 46 (sealed) & 47 (redacted).

## INTRODUCTION

The Department persists in willfully violating the Court's preliminary injunction. Upon finding unlawful and vacating the Department's *summer 2025* TRIO grant discontinuation decisions, the Court in April directed the Department to "reconsider" and "issue new determinations regarding continuation." Doc. 41. The Department proceeded to collect information from TRIO programs that it "needed" to make "new continuation decisions." But the Department shifted course in May, issuing termination notices to 28 TRIO programs that mirror the discontinuations. Then, after COE moved to enforce the preliminary injunction in June, the Department urged the Court to not rule, stating that it would reconsider in July. Eventually, the

[1] This accompanying declaration and exhibits to this Renewed Motion are separately being filed under seal pursuant to the Court's opinion and order, Docs. 33 & 44, granting COE's prior motion to file under seal certain documents that reveal the identities of COE's additional members. COE here is filing redacted versions of the accompanying declaration and exhibits to this Renewed Motion on the public docket.

Department on August 3 upheld most of the terminations in boilerplate letters.

Today, *one year* after the original decisions, 22 TRIO programs that are part of this case remain without a continuation determination based on the performance criteria under 34 C.F.R. § 75.253. COE acknowledges that its members are not entitled to grants. But the Department, for the fourth time now, still cannot provide a lawful explanation *why* the grants have not been continued.

With the August 3 decisions rendered, this renewed motion is unquestionably "ripe." For reasons the Court has already heard, COE requests that the Court vacate the 22 unlawful terminations. Given the Department's resistance to compliance with the preliminary injunction, however, COE does not at this time ask the Court to direct the Department to reconsider. As the D.C. Circuit has observed, "an agency, having reached a particular result, may become so committed to that result as to resist engaging in any genuine reconsideration of the issues." *Food Mktg. Inst. v. Interstate Com. Comm'n*, 587 F.2d 1285, 1290 (D.C. Cir. 1978). Such administrative stubbornness is where this case stands. Indeed, defiance is the Department's defense in this case. Realizing that a fifth decision is exceedingly unlikely to yield a different result at this point, and recognizing the Court's interest in the litigation proceeding, COE passes on reconsideration purgatory for now and will address remaining issues and remedies at summary judgment.

**BACKGROUND**

In 2025 the Department discontinued COE members' TRIO grants, all based on DEI-related language in the programs' original applications that allegedly violated Title VI and Title IX, and were "not in the best interest of the Federal Government." In January 2026, the Court entered a preliminary injunction, vacated discontinuations to members that COE identified, and directed the Department to issue new continuation decisions. The Department made continuation

determinations in March. In April, the parties proposed, and the Court adopted, a modified injunction covering additional members' TRIO programs. The Department then requested information from these programs, including performance data and plans for resuming operations, that it "needed" to make "new continuation decisions." *See generally* Doc. 46.

On May 19, the Department pivoted, issuing notices of termination to 28 TRIO programs. Rather than continuation award criteria at 34 C.F.R. § 75.253, the notices invoked 2 C.F.R. § 200.340(a)(4). Citing the same DEI-related language as the 2025 decisions, the notices concluded that awarding these programs a grant would not "effectuate program goals or agency priorities." *See* Doc. 46, pp. 7-9.

Most of these programs (25 of 28) then requested the Department's reconsideration. On June 9, COE filed its Motion to Enforce on behalf of all 28 programs. After COE filed the Motion, the Department committed to reconsidering by July 17, and opposed the Motion on "ripeness" grounds. Doc. 53. At a July 14 hearing before the Court, the Department said it could not make decisions by July 17 but that it would issue them by "the end of the month." July 14 Tr. 30-32. The Court declined to rule on the Motion before the decisions.

The Department ultimately issued the decisions on August 3, denying 19 of the 25 programs' requests for reconsideration, and approving the other six. *See* Doc. 65. The August 3 denial decisions are attached. Declaration of Kimberly Jones, attached as Ex. 1, ¶¶10-11 & Ex. A. The Department did not issue decisions for the three other terminated programs that did not request reconsideration (*id.* ¶¶12-14), but these programs are affected all the same.

The August 3 denials mark the *fourth* time the Department has rejected these 22 programs—twice before, and twice after, the Court's injunction. These 22 programs have been dormant since summer 2025. Six of the 22 programs are Talent Search and Educational

Opportunity Center programs that should be in the final year of their five-year grant period, which expires on August 31, 2026. The Department's strategy in this case—delay, divert, deny—has largely frustrated relief for these programs. The other 13 programs should be in their fourth year; the fifth year begins September 1, 2026. They stand to lose another year, compounding the harm already inflicted to date.

## ARGUMENT

The Court should issue an order enforcing the preliminary injunction and vacating these 22 TRIO programs' termination decisions. "A motion to enforce must be granted if a prevailing plaintiff demonstrates that a defendant has not complied with a prior judgment entered against it, and denied if a plaintiff has received all relief required by the prior judgment." *Escobar Molina v. DHS*, No. 25-cv-3417, 2026 WL 125623, at *8 (D.D.C. 2026).

### I. The termination decisions violate the preliminary injunction

COE's Motion to Enforce already explained why the May 19 decisions violate the preliminary injunction. To briefly recap:

*First*, the Court ordered the Department to "reconsider" the 2025 discontinuations and "issue new determinations regarding continuation of grants." Doc. 41. Continuation decisions are based on performance criteria under 34 C.F.R. § 75.253(b). Commenting on the 2025 discontinuations, the Court "[was] left to guess whether and how the Department analyzed the relevant data relating to grantee performance as required under 34 C.F.R. § 75.253(b)." Doc. 28, p. 29. No guesswork is needed this time. The May 19 terminations do not even purport to consider the programs' performance—despite the Department soliciting and collecting this information from programs in April. *See* Doc. 47 at pp. 5-6.

*Second*, the Department evaded the Court's injunction against "implementing" or

"enforcing" the 2025 discontinuations "through any other means." Doc. 41. Both the discontinuations and terminations were "bas[ed] on . . . compliance with new policies and priorities" that the Department did not subject to notice and comment and that it retroactively applied. Doc. 28, p. 29. The only "difference" is that the Department replaced 34 C.F.R. § 75.253(a)(5) and "best interest of the Federal Government" with 2 C.F.R. § 200.340(a)(4) and "program goals or agency priorities." Under both regulations, "[i]t is unlawful to make funding decisions for approved multi-year Grantees by evaluating their original grant applications against new unpublished priorities not in effect at the time that the Grants were approved." *Washington v. U.S. Dep't of Educ.*, No. 26-cv-2409, 2026 WL 2150222, at *3 (W.D. Wash. July 27, 2026); *New Jersey v. OMB*, No. 1:25-cv-11816, 2026 WL 2069832 (D. Mass. July 17, 2026) (§ 200.340(a)(4) "does not permit agencies to terminate grants based on program goals and agency priorities identified after grants were awarded").

The Department misses the point in contending that "nothing in the Court's injunction affects the Department's ability to terminate pursuant to 2 C.F.R. § 200.340(a)(4)." Doc. 53, p. 14. The Court enjoined the Department from "enforcing" its discontinuations "through any other means," such that it could not "simply reinstate [the] unlawful" decisions "under the guise" of a different regulation and "expect the Court to turn a blind eye." *N.Y. Times v. Dep't of Def.*, 830 F. Supp. 3d 1, 8 (D.D.C. 2026). Parties cannot avoid "[a] preliminary injunction through a mere change of terminology," *United States v. Christie Indus.*, 465 F.2d 1002, 1007 (3d Cir. 1972), and courts "need not accept a 'dubious literal interpretation of [an] injunction, particularly where that interpretation is designed to evade the injunction's goals,'" *N.Y. Times*, 830 F. Supp. 3d at 8 (citation omitted).

It is also no answer that "nothing in the Court's Order . . . requires the Department to issue

a continuation decision when it has independent grounds to terminate." Doc. 53, p. 12. The Department has never offered "*independent* grounds to terminate." The regulation permits termination "pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." Referring to the regulation at the July 14 hearing, the Court explained that "the regulation doesn't give [the Department] carte blanche to just terminate at will." July 14 Tr. 34:23-24. This is especially so given that DEI policies were not "terms and conditions" of the awards. *See Metropolitan Transp. Authority v. Duffy*, No. 25-cv-1413, 2026 WL 588117 (S.D.N.Y. 2026).

*Third*, the Department failed to seek these programs' voluntary compliance with Title VI and Title IX *before* issuing the May 19 terminations. The Court enjoined the Department "from reissuing Notices of Non-Continuation . . . without satisfying the requisite procedures, including, where applicable, the requirements under Title VI, Title IX." Doc. 41. The Department's only response is that the termination notices did not expressly find the programs noncompliant with civil rights laws. But the discontinuations had quoted DEI language that "likely violate the letter or purpose of Federal civil rights laws," and the termination notices included the same language. Doc. 47, pp. 6-8. Like in other cases, the Department's argument is "incongruent with what the record reveals about the agencies priorities and decisionmaking process." *President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77 (D. Mass. 2025).

Indeed, in every recent case where new DEI policies precipitated grant terminations or discontinuations, courts have rejected the position that 2 C.F.R. § 200.340 and 34 C.F.R. § 75.253 "nullify" Title VI and Title IX procedural protections. *Id.*; *see Bd. of Educ. of City Sch. Dist. v. U.S. Dep't of Educ.*, No. 26-cv-8547, 2026 WL 948205, at *6 (S.D.N.Y. 2026) ("In fact, accepting defendants' argument that they can talk almost exclusively about Title IX but then claim that Title

IX procedures do not apply would largely render the specific enforcement provisions that Congress wrote into the statute irrelevant"); *see also New York v. Admin. for Child. & Fams.*, No. 26-cv-172, 2026 WL 673848 (S.D.N.Y. 2026); *Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907 (N.D. Cal. 2025); *Maine v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 200 (D. Me. 2025); *Washington*, 2026 WL 2150222.

In sum, because the May 19 terminations "simply reimplemented precisely the same" unlawful discontinuations, the Department "violated the express terms of [the Court's] mandate." *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 921 (D.C. Cir. 1984).

As for the August 3 denials, they merely reaffirm the May 19 terminations, concluding that an award to these programs would not "effectuate" the "goals" of the TRIO programs. Moreover, they are exceptionally vague, in violation of the APA's arbitrary and capricious standard and in ignorance of the Court's instruction at the July 14 hearing that "if they are going to be termination decisions, I assume they're going to be made with some kind of information given and reasoning in compliance with the language or bearing in mind the language of my original opinion and order." July 14 Tr. 33:16–20. Regrettably, despite the Court's admonishment and warning that it didn't "want to be back here on this again," *id.* 33:20, because of the Department's conduct, we must be.

## II. The Court should vacate the May 19 termination decisions and the August 3 denials

The Court should enforce the preliminary injunction and vacate the termination decisions for the 22 TRIO programs.[2] Vacatur of unlawful grant decisions, as one court recently found,

[2] The Court has independent authority to hold the Department in civil contempt and to impose sanctions for its "noncompliance with [the] injunction." *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019). As COE previously explained, the Department could have sought to clarify the scope of the preliminary injunction, like in did in the *Washington* case precisely to avoid being held in contempt. *See* Doc. 56, p. 4 n.2. "Disagreements with judicial decisions must be resolved through motions, stays, and appeals, not through unilateral noncompliance." *J.G.G. v. Trump*, No. 25-5124, 2025 WL 3198891, at *2 (D.C. Cir. 2025). Wary of being held in contempt for violating an

"holds independent legal value." *Dallas Cty., Tx. v. Kennedy, Jr.*, No. 25-cv-4242, 2026 WL 2123225, at *8 (D.D.C. July 23, 2026). Further, vacating the terminations would restore the 22 TRIO programs to the "status quo" immediately prior to their May 19 terminations.

Because the Department refuses to engage "in any genuine reconsideration" of the decisions, however, COE does not ask the Court, at this stage, to order the Department to reconsider yet again. *Food Mktg. Inst.*, 587 F.2d at 1290. The Department's actions are a "problem," but "whack-a-mole" games to "require compliance" on another round of reconsideration would only serve to delay the case. *N.Y. Times*, 830 F. Supp. 3d at 9. COE is mindful of the Court's interest in proceeding to summary judgment. July 14 Tr. 31:9-10.

Accordingly, while COE is adamant that the Department must lawfully issue continuation decisions, the Court should set aside the termination decisions. COE will seek complete, appropriate relief on behalf of these programs (and others) in its motion for summary judgment.

Finally, as noted in the parties' August 14 Joint Status Report, COE intends to file a supplemental complaint to address and challenge the Department's actions post-dating the original complaint (including, but not necessarily limited to, the terminations). Doc. 67. COE intends to do so as a precautionary measure in order to preempt a future disagreement over the contents of the administrative record or the scope of the claims at summary judgment. To be sure, whether a supplemental complaint is required to challenge the terminations in this posture is debatable. *See Washington v. HUD*, No. 25-cv-626, 2026 WL 1863886, at *5 (D.R.I. June 29, 2026)

---

injunction in the *Washington* mental health grants case that similarly ordered "continuation determinations," the Department proactively sought the court's clarification *before* terminating grants there. (The court last month held that the planned terminations were likely unlawful; *see Washington*, 2026 WL 2150222). The Department's failure to seek clarification here and proceed directly to terminating was even more egregious.[2] COE reserves the right to seek attorney's fees and costs incurred in connection with litigating the unlawful terminations under both the Equal Access to Justice Act and the Court's inherent authority to sanction a party's litigation conduct.

(supplemental complaint "unnecessary" where plaintiffs' motion "made [the] Court sufficiently aware of their concerns with HUD's compliance with the Court's directives"). Nevertheless, the Department agreed to COE supplementing its original complaint and to producing an administrative record pertaining to the terminations. Thus, supplementing will facilitate a "disposition of the entire controversy between the parties." Fed. R. Civ. P. 15(d). The Department also agreed to not file a Rule 12 motion in response, so supplementing also "will not cause undue delay." *Id.* Nothing, however, precludes the Court from granting the Renewed Motion in the interim.

## CONCLUSION

For these reasons, COE requests that the Court grant this Renewed Motion to Enforce. A proposed order is attached. COE defers to the Court as to the need for a hearing.

**District of D.C. Local Rule 7.1(m) Duty to Confer**

Undersigned counsel certifies compliance with Local Rule 7.1(m)'s duty to confer. Specifically, undersigned counsel for COE discussed noncompliance with the Court's preliminary injunction and COE's intent to renew the motion to enforce the preliminary injunction by teleconference on August 14, 2026. The Department opposes this motion.

Dated: August 17, 2026

Respectfully submitted,

**THOMPSON COBURN LLP**

*/s/ Brandt P. Hill*
Brandt P. Hill (*Pro hac vice*)
Lorrie L. Hargrove (*Pro hac vice*)
2311 Highland Avenue, Suite 330
Birmingham, Alabama 35205
P. (205) 769-4303
E. bhill@thompsoncoburn.com
lhargrove@thompsoncoburn.com

Jayna Marie Rust (D.C. Bar No. 998326)
1909 K Street N.W., Suite 600
Washington, D.C. 20006
P. (202) 585-6929
E. jrust@thompsoncoburn.com

*Counsel for the Council for Opportunity in Education*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2026, I served the foregoing document on all counsel of record using the Court's CM/ECF system.

*/s/ Brandt P. Hill*
Of Counsel